JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Nickyeea Yabrough
2522 S. 62nd Street, 2F, Phila., PA, 19142

**DEFENDANTS** - Otis Bullock, Jr., Patricia McClay and Diversified Community Services, Inc., 1529 South 22nd Street, Phila., PA 19146

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*
Robert M. Goldich, Esq. - (215-988-7800)
Malcolm J. Ingram, Esq. - (215-988-7830)
Greenberg Traurig, 1717 Arch Street, Suite 400, Phila., PA 19103

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
§1331
Brief description of cause:
Violation of Title VII

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $50,000**

CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
November 19, 2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant:

_____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | | |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☐ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☐ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☐ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☐ |

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____    _____    _____
                                                                          *Attorney-at-Law / Pro Se Plaintiff*                              *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify): _____*

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify): _____*
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: _____    _____    _____
                                                                          *Attorney-at-Law / Pro Se Plaintiff*                              *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

Robert M. Goldich, Esq.
Malcolm J. Ingram, Esq.
Greenberg Traurig, P.C.
1717 Arch Street, Suite 400
Philadelphia, PA 19102
T: (215) 988-7830
Attorneys for Diversified Community Services, Inc., Otis Bullock, Jr., and Patricia McClay

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT PENNSYLVANIA

|  |  |  |
|---|---|---|
| NIKKYEEA YABROUGH | : | Hon. _____, U.S.D.J. |
| 2522 S. 62nd Street, 2F | : | |
| Philadelphia, PA 19142 | : | Civ. Action No. 21-cv-_____ |
| | : | |
| *Pro se* Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| OTIS BULLOCK, JR., PATRICIA | : | |
| McCLAY and DIVERSIFIED | : | |
| COMMUNITY SERVICES, INC. | : | |
| | : | |
| Defendants. | : | |

## NOTICE AND PETITION FOR REMOVAL

TO:   Kate Barkman, Clerk of Court
      Clerk's Office
      U.S. District Court for the Eastern District of Pennsylvania
      2609 U.S. Courthouse
      601 Market Street
      Philadelphia, PA 19106-1797

      Nikkyeea Yabrough
      2522 S. 62nd Street, 2F
      Philadelphia, PA 19142
      *Pro se* Plaintiff

Pursuant to 28 U.S.C. §§1331, 1441, and 1446, Defendants, Diversified Community

Services, Inc., Otis Bullock, Jr., and Patricia McClay (collectively "Defendants") respectfully

submit this Notice and Petition For Removal of a case from the Philadelphia County

1

(Pennsylvania) Court of Common Pleas and state as follows as the basis for removal:

1.      On or about May 26, 2021, Plaintiff, Nikkyeea Yabrough, filed a civil action captioned *Nikkyeea Yabrough v. Diversified Community Services, Inc., et al.*, Case ID 210502308, in the Philadelphia County Court of Common Pleas.  A true and correct copy of Plaintiff's "Complaint-Civil Action" in that action (hereinafter referred to as the "Complaint") is attached hereto as **Exhibit A**.

2.      On June 3, 2021, Plaintiff served Defendants Otis Bullock, Jr. ("Bullock") and Patricia McClay ("McClay") with the Complaint, along with a Civil Cover Sheet, Notice to Defend, and Acceptance of Service pursuant to Pa. R. Civ. P. 402(b).

3.       On November 17, 2021, Plaintiff served Defendant Diversified Community Services, Inc. ("Diversified Community Services") with the Complaint, along with a Civil Cover Sheet, Notice to Defend, and Acceptance of Service pursuant to Pa. R. Civ. P. 402(b). More specifically, Malcolm J. Ingram, Esq., accepted service of those documents. A true and correct copy of Mr. Ingram's executed Acceptance of Service is attached hereto as **Exhibit B**.

4.      The Complaint, Civil Cover Sheet, Notice to Defend, and Acceptance of Service that were served upon Diversified Community Services, Bullock, and McClay constitute all pleadings, process, and other documents that Plaintiff served upon Defendants in this action.  The Complaint was the initial pleading received by Defendants setting forth the claims upon which Plaintiff's action is based.

5.      This Notice and Petition is timely filed under 28 U.S.C. § 1446(b) because Defendant Diversified Community Services, Inc. effected removal within thirty (30) days of receipt of proper service of a paper from which it could first be ascertained that this action is

removable. *See* 28 U.S.C. § 1446(b). Further, Defendants Bullock and McClay consent to this removal.

6.     Defendants have not filed any answer or other pleading in the Philadelphia County Court of Common Pleas.

7.     This is an employment discrimination matter. Among other things, Plaintiff alleges Defendants terminated her employment in violation of the Title VII of the Civil Rights Act of 1964, as amended ("Title VII") 42 U.S.C. 2000e *et seq*. *See* **Exhibit A**, ¶¶26-27.

8.     Accordingly, this Court has original jurisdiction of Plaintiff's claims under 28 U.S.C. §§1331, by virtue of the federal question arising out of Plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq*.

9.     Pursuant to 28 U.S.C. §1367 and §1441(c), this Court has supplemental jurisdiction over Plaintiff's additional Pennsylvania law claims because it forms part of the same cause or controversy.  *See* **Exhibit A**, Count II.

10.     Defendants submit this Notice and Petition for Removal without waiving any defenses to the claims asserted by Plaintiff and without conceding Plaintiff has pled any claim(s) upon which relief may be granted.

11.     Venue is proper in this Court.

12.     Pursuant to 28 U.S.C. §1446(d), Defendants have given written notice of the removal of this action to all adverse parties and have filed a copy of this Notice and Petition for Removal with the Prothonotary of the Philadelphia County Court of Common Pleas.

WHEREFORE, Defendants respectfully request that the within action, now pending in the

Philadelphia County Court of Common Pleas, be removed to the U.S. District Court for the Eastern

District of Pennsylvania.

Respectfully submitted,

/s/ *Malcolm J. Ingram*
Malcolm J. Ingram (Pa. I.D.  #323201)
Robert M. Goldich (Pa. I.D.  #25559)
**GREENBERG TRAURIG, LLP**
1717 Arch St., Suite 400
Philadelphia, PA 19103
(215) 988-7800
(215) 988-7801 (fax)
ingramm@gtlaw.com
goldichr@gtlaw.com

DATED:  November 19, 2021

# EXHIBIT A

Court of Common Pleas of Philadelphia
County Trial Division

# Civil Cover Sheet

| | For Office of Judicial Records Use Only (Docket Number) |
|---|---|
| | **MAY 2021**   002308 |

PLAINTIFF'S NAME
Nikkyeea Yabrough

PLAINTIFF'S ADDRESS
2522 S. 62nd st. 2F
Philadelphia PA 19142

PLAINTIFF'S NAME

PLAINTIFF'S ADDRESS

PLAINTIFF'S NAME

PLAINTIFF'S ADDRESS

DEFENDANT'S NAME
Otis Bullock

DEFENDANT'S ADDRESS
1529 s. 22nd street
Phila., PA 19146

DEFENDANT'S NAME
Patricia McClay

DEFENDANT'S ADDRESS
1529 s. 22nd street
Phila., PA 19146

DEFENDANT'S NAME
Diversified Community Services

DEFENDANT'S ADDRESS
P.O Box 182366 Columbus OH
43218-2366

TOTAL NUMBER OF PLAINTIFFS
1

TOTAL NO. OF DEFENDANTS
3

COMMENCEMENT OF ACTION
- [X] Complaint
- [ ] Writ of Summons
- [ ] Petition Action
- [ ] Transfer From Other Jurisdictions
- [ ] Notice of Appeal

AMOUNT IN CONTROVERSY
- [X] $50,000.00 or less
- [ ] More than $50,000.00

COURT PROGRAMS
- [ ] Arbitration
- [X] Jury
- [ ] Non-Jury
- [ ] Other:
- [ ] Mass Tort
- [ ] Savings Action
- [ ] Petition
- [ ] Minor Court Appeal
- [ ] Statutory Appeals
- [ ] Commerce (Completion of Addendum Required)
- [ ] Settlement
- [ ] Minors
- [ ] W/D/Survival

CASE TYPE AND CODE (SEE INSTRUCTIONS)
2L  (1J)  4Y

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

2021 MAY 26

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

CMPLC-Yabrough Vs Bullock Etal

21050230800005

IS CASE SUBJECT TO COORDINATION ORDER?
Yes [ ]   No [ ]

TO THE OFFICE OF JUDICIAL RECORDS:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:
Papers may be served at the address set forth below.

NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY
Nikkyeea Yabrough

PHONE NUMBER
267-257-7362

FAX NUMBER

SUPREME COURT IDENTIFICATION NO.

SIGNATURE
Nk Yabrough

ADDRESS (SEE INSTRUCTIONS)
2522 S. 62nd street 2f
Phila., PA 19142

E-MAIL ADDRESS
nyabrou2@gmail.com

DATE
5/26/21

01-101 (Rev 3/2014)

# Instructions for Completing Civil Cover Sheet

Rules of Court require that a Civil Cover Sheet be attached to any document commencing an action (whether the action is commenced by Complaint, Writ of Summons, Notice of Appeal, or by Petition). The information requested is necessary to allow the Court to properly monitor, control and dispose cases filed. A copy of the Civil Cover Sheet must be attached to service copies of the document commencing an action. The attorney or non-represented party filing a case shall complete the form as follows:

**A.  Parties**

    *i.  Plaintiffs/Defendants*
      Enter names (last, first, middle initial) of plaintiff, petitioner or appellant ("plaintiff") and defendant. If the plaintiff or defendant is a government agency or corporation, use the full name of the agency or corporation. In the event there are more than three plaintiffs and/or three defendants, list the additional parties on the Supplemental Parties Form. Husband and wife are to be listed as separate parties.

    *ii.  Parties' Addresses*
      Enter the address of the parties at the time of filing of the action. If any party is a corporation, enter the address of the registered office of the corporation.

    *iii.  Number of Plaintiffs/Defendants:* Indicate the total number of plaintiffs and total number of defendants in the action.

**B.  Commencement Type:** Indicate type of document filed to commence the action.

**C.  Amount in Controversy:** Check the appropriate box.

**D.  Court Program:** Check the appropriate box.

**E.  Case Types:** Insert the code number and type of action by consulting the list set forth hereunder. To perfect a jury trial, the appropriate fees must be paid as provided by rules of court.

### Proceedings Commenced by Appeal

**Minor Court**
5M   Money Judgment
5L    Landlord and Tenant
5D   Denial Open Default Judgment
5E    Code Enforcement
    Other:
**Local Agency**
5B   Motor Vehicle Suspension -
    Breathalyzer
5V   Motor Vehicle Licenses,
    Inspections, Insurance
5C   Civil Service
5K   Philadelphia Parking Authority
5Q   Liquor Control Board
5R   Board of Revision of Taxes
5X   Tax Assessment Boards
5Z   Zoning Board
52   Board of View
51   Other:
Other:

### Proceedings Commenced by Petition

8P   Appointment of Arbitrators
8C   Name Change - Adult
8L   Compel Medical Examination
8D   Eminent Domain
8E   Election Matters
8F   Forfeiture
8S   Leave to Issue Subpoena
8M Mental Health Proceedings
8G Civil Tax Case - Petition
Other:

### Actions Commenced by Writ of Summons or Complaint

**Contract**
1C   Contract
1T Construction
1O   Other:
**Tort**
2B Assault and Battery
2L   Libel and Slander
4F   Fraud
1J   Bad Faith
2E Wrongful Use of Civil Process
    Other:
**Negligence**
2V Motor Vehicle Accident
2H Other Traffic Accident
1F   No Fault Benefits
4M  Motor Vehicle Property Damage
2F Personal Injury - FELA
2O   Other Personal Injury
2S Premises Liability - Slip & Fall
2P   Product Liability
2T   Toxic Tort
    *T1  Asbestos*
    *TZ  DES*
    *T2  Implant*
3E  Toxic Waste
    Other:

**Professional Malpractice**
2D   Dental
4L   Legal
2M Medical
4Y   Other:
1G Subrogation
**Equity**
E1    No Real Estate
E2    Real Estate
1D Declaratory Judgment
M1  Mandamus
**Real Property**
3R Rent, Lease, Ejectment
Q1   Quiet Title
3D Mortgage Foreclosure - Residential
    Owner Occupied
3F Mortgage Foreclosure - Not Residential
    Not Owner Occupied
1L Mechanics Lien
P1   Partition
    Prevent Waste
1V  Replevin
1H Civil Tax Case - Complaint
    Other:

**F.  Commerce**
**Program**
Commencing January 3, 2000 the First Judicial District instituted a Commerce Program for cases involving corporations and corporate law issues, in general. If the action involves corporations as litigants or is deemed a Commerce Program case for other reasons, please check this block AND complete the information on the "Commerce Program Addendum". For further instructions, see Civil Trial Division Administrative Docket 01 of 2000.

**G.  Statutory Basis for Cause of Action**
If the action is commenced pursuant to statutory authority ("Petition Action"), the specific statute must be identified.

**H.  Related Pending Cases**
All previously filed related cases, regardless of whether consolidated by Order of Court or Stipulation, must be identified.

**I.  Plaintiff's Attorney**
The name of plaintiff's attorney must be inserted herein together with other required information. In the event the filer is not represented by an attorney, the name of the filer, address, the phone number and signature is required.

**The current version of the Civil Cover Sheet may be downloaded from the FJD's website**
**http://courts.phila.gov**

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS OF PHILADELPHIA

Nikkyeea Yabrough

vs                                                        **MAY 2021**

Otis Bullock                                              002308
Patricia McClay
Diversified Community Services

## NOTICE TO DEFEND

<table>
<tr><td>

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

Philadelphia Bar Association
Lawyer Referral
and Information Service
1101 Market St., 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-6333

</td><td>

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
1101 Market St., 11th Piso
Filadelfia, Pennsylvania 19107
(215) 238-6333

</td></tr>
</table>

10-284

**IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION - CIVIL**

Nikkyeea Yabrough

_____
Plaintiff(s)

v.

Otis Bullock, Patricia McClay
Diversified Community Services
_____
Defendant(s)

**MAY 2021** _____ Term, 20_____

No. **002308**

CIVIL ACTION COMPLAINT

Nikkyeea Yabrough
2522 s 62nd Street 2F
Philadelphia PA 19142
267-257-7362
Nyabrou1@gmail.com

Court of Common Pleas of Philadelphia County Trail Division

Nikkyeea Yabrough (Plaintiff)
VS
Otis Bullock, Patricia McClay, Diversified Community Services (Defendants)

### Complaint

plaintiff, Nikkyeea Yabrough claims that Defendants Otis Bullock, Patricia McClay, Diversified Community Services contributed to nonprofit misconduct by allowing and contributing to the mishandling of housing clients as well as the named plaintiff a former employee, Nikkyeea Yabrough. Through the defendant's negligent actions, the work environment was intimidating for current as well as former employees located at The Dixon House 1920 s 20th Street Philadelphia Pa 19145. Employees were subjected to and experienced a toxic work environment. Emphasis placed on employee conduct through fabricated accounts made by Tennille Hannah provided to Patricia McClay regarding employee behavior became more important than servicing clients and people in the South Philadelphia community. plaintiff, Nikkyeea Yabrough will provide testimony against named Defendants to show the courts that plaintiff was terminated from Diversified Community Services for simply being conscious, communicating shortfalls of the housing department, and fulfilling the job description the organization hired her to do.

### Parties

1. Plaintiff, Nikkyeea Yabrough, who is currently a resident of Philadelphia Pennsylvania.
2. Defendants Otis Bullock (Executive director of DCS), Patricia McClay (Chief of Staff, DCS) resides in Philadelphia Pennsylvania
3. Diversified Community Services (address unknown) Po box provided on Civil court sheet
4. All the acts and/or failures to act alleged herein were duly performed by and/or are attributable to defendants, individually or acting by and through their agents and employees. Said acts and/or failures to act were within the scope of any agency or employment or were ratified by defendants.

### Facts

5. Defendant Otis Bullock is the current Executive Director of Diversified Community Services
6. Defendant Patricia McClay is the current Chief of Staff of Diversified Community Services

7. Plaintiff Nikkyeea Yabrough was interviewed and hired November 1st, 2019, by at the time Director of Housing Carmen Corabollo and Defendant Patricia McClay, as the Housing Intake Specialist **(See exhibit A)**

8. November 12th, 2019, Plaintiff Nikkyeea Yabrough reached out to Director of Housing Carmen Corabollo to discuss employee observations and conduct of Nicole Spruill (at the said time building/Housing Supervisor) and Tennille Hannah (Housing Counselor). Meeting was set up a few days later **(See Exhibit B)**

9. Plaintiff Nikkyeea Yabrough no longer has access to work email to get actual date and time of the meeting, but discussion included and was not limited to Tennille and Nicole conduct towards each other with no direct emphasis or concern for client interaction.

10. Plaintiff Nikkyeea Yabrough, met with Anton Moore (alleged Active Board Member of DCS) to discuss details of the meeting with Carmen Corabollo, about the housing department and conduct of Dixon House employees Tennille Hannah and Nicole Spruill. Plaintiff Nikkyeea Yabrough can and will call on Anton Moore to provide Testimony of that said Meeting as well as a Dujuan Tinsley who was also present at the said meeting which occurred at a diner on Broad Street.

11. February 24th, 2020, Plaintiff Nikkyeea Yabrough was terminated under spoken pretense provided directly by Patricia McClay that Plaintiff Nikkyeea Yabrough was "Sticking her chest out". Plaintiff Nikkyeea Yabrough was 90 days in to the 120-day probation period. Termination letter can be provided by Diversified Community Services but was summarized to explain Plaintiff Nikkyeea Yabrough didn't meet the organizations requirements. Further details of the termination can be provided by Plaintiff Nikkyeea Yabrough. Plaintiff Nikkyeea Yabrough provided email correspondence of statements regarding termination to Defendants Patricia McClay and Otis Bullock asking for employment reconsideration **(See exhibit C 1-4)**

12. As a result of letters sent to Defendants Otis Bullock and Patricia McClay a meeting was called between Plaintiff Nikkyeea Yabrough and Defendant Otis Bullock on March 3rd, 2020. As a result of that said meeting Plaintiff Nikkyeea Yabrough was given her job back **(See Exhibit D 1-3)**

13. March 4th, 2020, Plaintiff Nikkyeea Yabrough returned to work at The Dixon House

14. March 17th, 2020, through to July 2020 Diversified Community Services shut its doors due to the COVID-19 Pandemic. Employee communication was restricted to email and phone correspondence only. Although employees of diversified Community Services were paid to work from home, lack of leadership, training, processes and technology from Defendants Otis Bullock, Patricia McClay and Diversified Community Services resulted in failed attempts to maintain housing client interaction.

15. Employees returned to The Dixon House mid-July only to learn Diversified Community Services was at risk of losing funding grants. Mid July through to September housing, parenting and energy departments of The Dixon House met weekly with Defendant Patricia McClay and housing counselor Tennille Hannah to discuss rumors of a merger with United Communities (believe the address to be 2029 s 8th Street). Topics included but were not limited to restructuring processes, improving communication amongst team, flyer and marketing generation with goal of healing Diversified Community Services, and The Dixon House said reputation.

16. Meeting agendas, goals and instruction were not followed up by Defendants Otis Bullock (who was never present at scheduled meetings) and Patricia McClay.

17. July 8th, 2020, Meeting request made by defendant Patricia McClay was sent to Plaintiff Nikkyeea Yabrough. Phone meeting was scheduled and occurred for July 9th2020 10am. Defendant Patricia McClay accused Plaintiff Nikkyeea Yabrough with helping an employee named Martin Lewis (Housing Counselor) with his client workload. In defense of Martin Lewis Plaintiff Nikkyeea Yabrough verbally provided testimony to Defendant Patricia McClay over the phone, that Martin Lewis was great at training as well as working with mortgage servicers and clients assisting both with mortgage workout options that ended with the result of clients being able to retain their primary residences and homes. **(See Exhibit E 1-2)**

18. September 10th, 2020, upon learning about being discharged from Diversified Community Services, Martin Lewis (Housing Counselor) with assistance from Plaintiff Nikkyeea Yabrough created and sent an email to Defendant Patricia McClay containing case statuses of Martins' clients facing foreclosure and mortgage default. Through testimony Martin Lewis can provide details about his departure. Defendant Patricia McClay did not respond to email. Those client case files were not sought after, and no instruction was given to the housing department to assist or redirect those clients to other service programs. **(See Exhibit F 1-4)**

19. December 18th, 2020, news article "Pa. misses deadline to spend $108M in rent, mortgage relief from CARES ACT" circulates through online news outlets and social media, such as Facebook, Instagram, Twitter etc. **(See Exhibit G 1-5)**

20. December 20th, 2020, Plaintiff Nikkyeea Yabrough posted an opinion-based response reacting to the details in said article on her social media accounts Facebook and Instagram. Plaintiff Nikkyeea Yabrough will provide testimony of how her video post was taken and shared by another social media platform page named NOGUNZONE.

21. December 21st, 2020, Plaintiff Nikkyeea Yabrough was interviewed by Jenice Armstrong a columnist with the Philadelphia Inquirer. The outcome of said interview bought about news article "We should be fired up about Scrooge-like $600 federal stimulus checks and Pa's bungling of housing aid" published and shared through online news outlets and social media. **(See Exhibit H 1-7)**

22. December 30th, 2020, a Zoom meeting was called by Defendant Otis Bullock. Meeting Agenda initially unknown. Attendees of said meeting were Defendants Otis Bullock and Patricia McClay along with Plaintiff Nikkyeea Yabrough, Tennille Hannah and David (last name can be provided in court). Plaintiff Nikkyeea Yabrough will provide testimony of all accusations made against her during said meeting. The meeting lasted roughly two minutes. Upon responding to accusations Defendant Otis Bullock stated to Plaintiff Nikkyeea Yabrough "You're Fired." Plaintiff Nikkyeea Yabrough gathered her things and was escorted from The Dixon House by Tennille Hannah.

23. December 30th, 2020, Plaintiff Nikkyeea Yabrough applied online for unemployment benefits. Plaintiff Nikkyeea Yabrough will provide testimony about the results of the unemployment claim, disputed by Defendant Patricia McClay and housing counselor Tennille Hannah. **(See Exhibit I 1-7)** Final determination of unemployment claim was made by the unemployment compensation board of review in favor of Plaintiff Nikkyeea Yabrough after appeal hearing that occurred on April 21st, 2021. **(See Exhibit J 1-6)**

24. December 30th, 2020, Plaintiff Nikkyeea Yabrough initiates a claim with the U.S Equal Employment Opportunity Commission.

25. January 1st, 2021, Plaintiff Nikkyeea Yabrough received through postal mail a corrective action form signed by Defendant Patricia McClay. **(See Exhibit K 1-5)**
26. January 26th, 2021, Plaintiff Nikkyeea Yabrough received confirmation receipt through email with instructions to finalize Equal Employment Opportunity Commission Claim.
27. February 12th, 2021, Plaintiff Nikkyeea Yabrough completes the Equal Employment Opportunity Commission Pre-Charge Inquiry **(See Exhibit L 1-26)**
28. February 26th, 2021, Plaintiff Nikkyeea Yabrough was issued a dismissal and notice of suit rights from the Equal Employment Opportunity Commission. **(See Exhibit M 1-2)**
29. Plaintiff Nikkyeea Yabrough will call upon for testimony four Past employees, one current employee, and one current active board member as witnesses who have saw, heard, experienced the nonprofit misconduct of Defendants Diversified Community Services, Otis Bullock and Patricia McClay

## Claims for Relief

### A.  Tort Claim

30. Defendant Otis Bullock failed to properly oversee and monitor operations and handling of clients of the housing department located at The Dixon House 1920 s 20th Street Philadelphia Pa 19145
31. Defendant Otis Bullock failed to properly oversee and monitor Patricia McClay's and Tennille Hannah's behavior, conduct and their contribution to the job culture and environment at The Dixon House 1920 s 20th Street Philadelphia Pa 19145
32. Defendants Otis Bullock and Patricia McClay acted negligently in handling of clients facing mortgage default and foreclosure at The Dixon House located at 1920 s 20th Street
33. Defendant Diversified Community Services failed to oversee operations and the behavioral performance of Otis Bullock and Patricia McClay and as a result has loss funding grants from the Division of Housing and Community Development and experienced partial funding cuts from The Energy Coordinating Agency.
34. Defendants Otis Bullock and Patricia McClay made defamatory statements against Plaintiff Nikkyeea Yabrough. **(Refer to exhibit K1-5)**
35. Defendants Otis Bullock and Patricia McClay acted in bad faith by making premature decisions to terminate Plaintiff Nikkyeea Yabrough as well as past employees; failed to investigate claims regarding employee conduct made by Tennille Hannah at The Dixon House location located at 1920 s 20th Street without allowing proper due diligence.
36. Defendant Patricia McClay now Chief of Staff of Diversified Community Services failed to provide and oversee proper required training of housing counselor's past and present located at The Dixon House located at 1920 s 20th Street.

### B.  Negligence

37. Defendants Diversified Community Services, Otis Bullock and Patricia McClay were incompetent; through wrongful acts distributing negligent behaviors ignoring the needs of clients facing mortgage default and foreclosure possibly causing harm and injury.
38. Defendants Otis Bullock and Patricia McClay caused injury to Plaintiff Nikkyeea Yabrough contributing to the Plaintiffs loss of income as set forth above.

## Prayer for Relief

**WHEREFORE,** Plaintiff prays for the following relief:

1. For compensatory damages for loss of income, for past, present, and future in excess of $34,902.00
2. For general damages past, present, and future pain and suffering, mental anguish and other damages in excess of $10,000.00
3. For court costs and filing fees of $5098.00
4. For interest at the statutory rate; and
5. For such other and further relief as this court deems just and equitable.

I declare under penalty of perjury under the law of the State of Pennsylvania that the foregoing is true and correct.

Dated this 26th day of May 2021.


Nikkyeea Yabrough
2522 s 62nd Street, 2F
Philadelphia Pa 19142
267-257-7362
Nyabrou1@gmail.com
Plaintiff, in proper person

**VERIFICATION**

I, _Nikkyeea Yabrough_____, Plaintiff/Defendant, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I understand that the statements contained herein are subject to the Penalties of 18 Pa.C.S.A., Section 4904 relating to unsworn falsification to authorities.

_Nikkyeea Yabrough_____
(Print Name)

_Niki Yabrough_____
(Signature)

Date: _5/26/21_

May 25, 2021

My name is Nikkyeea Yabrough an active Realtor licensed in the state of Pennsylvania. I hold a bachelor's degree (B.Ed.) from Temple University's department of education in the field of Adult Organizational Development and studies. I also graduated from the Community College of Philadelphia acquiring an associate of arts (A.A.) field of study centered at and around behavioral sciences.

I worked for Diversified Community Services for approximately one year. During my employment I personally sought out and received scholarships to attend online classes to acquire a HUD counseling certificate.  Such certificate of completions is in my possession and can be presented as evidence if a trail was to come.

Please consider the facts of my complaint to be true. Thanks

CMPLC-Yabrough Vs Bullock Etal

21050230800005

*Exhibit A*

*My JOB Position*

*intake position*



# DIVERSIFIED COMMUNITY SERVICES
## JOB POSTING

| Posting Date: | August 28, 2019 |
|---|---|
| Position | Housing Intake Specialist |
| Job Classification | Non-Exempt |
| Location: | Dixon House |
| Reports To: | Dixon House Manager |
| Contact: | Patricia McClay |
| Travel: | 0-15% |

## Position Summary:

The Housing Intake Specialist is responsible to obtain basic information and qualify clients for the housing department. This includes ensuring that all housing clients are properly screened and the intake process is complete prior to the start of the counseling session.

## Key Responsibilities:

- Screen housing clients and gather information necessary for assessment that includes the client profile information- contact information, services sought, income, and demographic information.
- Collect specific documentation in accordance with funders' guidelines.
- Utilize RX Office and Salesforce database systems to record housing clients profile information.
- Input data into RX Office database system and process eligible clients within a timely manner.
- Identify underlying causes that led to the crisis. Make referral for additional services as needed by the client.
- Assist with the intake process for all workshops (First Time Homebuyer, Anti-Predatory, Fair Housing, Financial Fitness, and Energy Conservation).
- Perform other related duties as assigned.

*Exhibit A²*

Experience/Skills:

High School Diploma or Equivalent. 2+ years working in Housing and Energy programs preferred. Strong customer service skills. Strong computer skills. Ability to interact with a diverse group of clientele.

## Other Skills:

Computer solid knowledge of MS Office including WORD, EXCEL, -and PowerPoint. The ability to communicate with all levels of the organization. Proficient in Housing Counseling Databases, including RX Office and Salesforce.

Other related skills: The ability to work with other groups to troubleshoot and brainstorm to create new programs or add to programs. One who has integrity and flexibility responding to immediate professional needs. Ability to maintain good relationships with mortgage lenders, real estate agencies and insurance companies.

How to apply:
Send resume and cover letter to: pmcclay@dcsphila.org or fax to: 215.336.5527.

We are proud to be an EEO employer M/F/DÆ We maintain a drug-free workplace.

 Gmail

## office observations

**nikkyeea yabrough** <nyabrou1@gmail.com>                    Tue, Nov 12, 2019 at 7:44 PM
To: Carmen Caraballo <ccaraballo@dcsphila.org>

Hi Carmen,

I was wondering if you and I can sit down and discuss some concerns I have. Nothing bad, I spoke with Nicole first earlier today and want to bring my concerns to your attention.

Out of respect to the office and our duty to serve the community I would ask that you keep this meeting between just you and I, until we meet. I'm new eyes and a neutral party and don't want to ruffle anyones feathers. I just feel in order for the Dixon's House housing department to move forward individuals behaviors and job roles needs some attention.

Thanks
Nikkyeea Yabrough
Century 21 Advantage Gold
2010 Oregon Avenue
Philadelphia, Pennsylvania 19145
Direct: 267-257-7362
Office: 215-465-1400 ext 2551

### CENTURY 21 Ranks Highest in Customer Satisfaction across All Home Buyer/Seller Segments for a Third Consecutive Year!

**Carmen Caraballo** <ccaraballo@dcsphila.org>                    Wed, Nov 13, 2019 at 11:38 AM
To: nikkyeea yabrough <nyabrou1@gmail.com>

Hi Nikkyeea,

Good Morning. Can you please call me? I'm in between meetings and have a few minutes to talk.

Get Outlook for Android

**From:** nikkyeea yabrough <nyabrou1@gmail.com>
**Sent:** Tuesday, November 12, 2019 7:44:51 PM
**To:** Carmen Caraballo <ccaraballo@dcsphila.org>
**Subject:** office observations

*exhibit C'*

 Gmail

---

# The draft I didn't send.

---

**nikkyeea yabrough** <nyabrou1@gmail.com>                                    Mon, Feb 24, 2020 at 7:35 PM
To: Patricia McClay <PMcClay@dcsphila.org>

Hi Pat,

Here's the actual draft I wanted to send last week. Go figure.  I'm
composing the email to send to you and Otis this evening. I just need
to gather my thoughts. It will follow this email.

Thanks

"I'm having difficulty fitting in here at The Dixon House. It's too
the point I'm questioning my ability to stay on.  Don't get me wrong I
love what I'm doing, what I learned so far and the clients I come
across on a daily basis. People are coming in, workshops going,
overall seems like we're pushing forward.

When I sat down with you and Carmen we discussed me being a realtor.
Against my better judgement I don't believe a realtor has a place
here.  I totally disagree but imagine working with people who doesn't
value the knowledge one brings to the table. It feels like I'm
constantly being told "sit down, do the job, shut up!" All because I
don't have a housing counselor certification. On top of that I have no
clear understanding of what I'm allowed to say or do. I love doing
intake. People have questions and concerns, I try my best to direct
them to the counselors but I'm not totally unaware of laws and ethics.

Martin and I have a great working relationship and he's been the one
teaching me a lot of the jargon and processes facilitated by housing
counselors.  I know there's more to learn and I'm willing to do so.
Yet On the other hand, When it comes to Tennille and Nicole, I don't
mind admitting, one I stepped into their mess prematurely. Second I
spoke openly to them both about their conduct, communication, and the
handling of each other. Lastly, I assumed incorrectly that by doing so
I would be respected just for speaking open and honest.  I mean hey,
how else was I suppose to handle the drama I was drugged into.

Pat, I get it that I'm new and I'm not aware of my mistakes until I
make them, if that helps you to understand my plight.

I'm constantly being told of things I can't say or do.  Have I made
mistakes, Yes. said that"

Sent from my iPhone

---

*exhibit C*

 Gmail

## February 20th Termination

**nikkyeea yabrough** <nyabrou1@gmail.com>          Mon, Feb 24, 2020 at 10:18 PM
To: Patricia McClay <pmcclay@dcsphila.org>, OBullock@dcsphila.org

Patricia,

Like I stated earlier i would like to sit with you and Otis to further discuss. I really hope you reconsider my employment.

See attached.  Thanks

Nikkyeea Yabrough
Century 21 Advantage Gold
2010 Oregon Avenue
Philadelphia, Pennsylvania 19145
Direct: 267-257-7362
Office: 215-465-1400 ext 2551

## CENTURY 21 Ranks Highest in Customer Satisfaction across All Home Buyer/Seller Segments for a Third Consecutive Year!

📄 **Monday February 24.docx**
    16K

Monday February 24, 2020

To: Patricia McClay and Otis Bullock
RE: Nikkyeea Yabrough Termination

Pat and Otis first let me thank you for the opportunity to work within your organization Diversified Community Services, The Dixon House. After talking with Pat over my termination this evening, I felt compelled to express how disappointed I am with myself first, but also with the organizations decision to let me go. I was just being praised for doing a good job, now we're here. I assumed it to be a minor mishap, but Pat explained in her words it appeared as though "I was sticking my chest out". Let me go further into detail on the reason why I feel I was terminated.

First, I'll start by saying Pat and Carmen knew I was a realtor when they hired me. I was told I could not do any real estate business during my time at work, while on the clock. I understood the conflict of interest.

Referring to the text messages Nicole received from me on February 20th, 2020 please understand the purpose of me saying, **"I was thinking about not coming back and taking a hit with the time."** Meant, I didn't think it was appropriate for me to come back to work on the day at question, simply because the meeting I attended went over the hour time that was stipulated. Before the text messages, I called in and spoke with Ms. Theresa who said, **"if anyone asked for you, I would make them aware you got held over."** I acknowledged I was late, and now understand how Nicole may have felt by me not speaking with her directly.

Furthermore, I thought by coming back it would appear that I could be stealing time. For instance, we are instructed to clock in (morning punch) and out (last punch for the day) with the newly installed timeclock. Lunch punches are not captured by the system. For transparency, and all fairness me saying I wasn't returning to work wasn't out of arrogance, I honestly felt it would be wrong to get paid for a full day of work. For accountability purposes I can see how my text message was misinterpreted, yet no one else in the housing department is being addressed about their comings and goings. I really didn't think it was a big deal especially because the next day Nicole didn't come to me about it. We went on with our work routines.

I honestly feel other instances leading up to that day as being the real reason for my termination. I shared my concerns and communicated what I saw to Carmen about a week and a half into my employment. Carmen and I sat and discussed the verbal outbreaks and blatant disrespect amongst Tennille and Nicole, those two towards each other, and their attitudes towards the organization as a whole. I openly communicated with Tennille and Nicole how I felt about their unprofessionalism, lack of guidance, lack of training, and ignorance towards the community of people we are supposed to serve. This caused a wedge between us three and added tension to our workspace. So, I feel the day I didn't return to work was the result of me speaking up against them both regarding their behaviors, not for taking a half day of work.

Pat and Otis I would like the courtesy of sitting with you both. To me this was simply something that spiraled over my time. February 20th, was a misunderstanding. I'm days shy of the 120-day

probation period. Within that time, I built a great working relationship with Mr. Martin, he has taught me a great deal about the programs offered to consumers regarding help with delinquent mortgages. I was approved for two scholarships that would allow me to become a fully certified housing counselor, and I told Pat today, I really felt I could have contributed in turning Dixons' House housing department around. I've built trusting relationships with clients, because I cared about the environment of people we served.

Lastly, I thought about bringing to your attention the mishandling of clients and their case files, truly that is the bigger issue. I never thought this incident would outshine the negligence I openly pointed out to Nicole regarding client's case files and underrepresentation. To my understanding the Dixon House has lost some great people under the leadership of Tennille via Nicole. I would like to elaborate more if allowed, if not thanks again for the opportunity.

Nikkyeea Yabrough

*Exhibit D₁*

☰  **M** Gmail          🔍  pmcclay@dcsphila.org

Compose

**Inbox**                    398

Starred

Snoozed

Important

Chats

Sent

Drafts

**Meet**

New meeting

Join a meeting

**Hangouts**

🔵 nikkyeea               +

Tiffani, Latasha
You were in a video call

## Meeting w/Nikki Yarborough          Inbox ×

**Otis Bullock** <OBullock@dcsphila.org>
to me, Patricia

|  | **Meeting w/Nikki Yarborough** |
|---|---|
| **3** | View on Google Calendar |
| **Tue** | Tue Mar 3, 2020 11am – 12pm ( |

Diversified Community Services
Center - 1529 S, 22nd Street Phil
3rd Floor Conference Room

📄 invite.ics  Download

Reply          Reply all          Forward

exhibit D2

 Gmail

## Personnel Meeting

**Charlene Ryant** <cryant@dcsphila.org>                              Wed, Feb 26, 2020 at 12:59 PM
To: "nyabrou1@gmail.com" <nyabrou1@gmail.com>
Cc: Otis Bullock <OBullock@dcsphila.org>, Patricia McClay <PMcClay@dcsphila.org>

Good afternoon Ms. Yarborough your meeting with Otis Bullock has been scheduled for Tuesday March 3rd, 2020
here in our office at the Mamie Nichols Center for 11:00 a.m.

Thank you,

**Nikki Yarbrough** <nyabrou1@gmail.com>                              Thu, Feb 27, 2020 at 6:05 AM
To: Charlene Ryant <cryant@dcsphila.org>

Thanks Charlene

Sent from my iPhone

*exhibt D*

 Gmail

## Thanks you

**Nikki Yarbrough** <nyabrou1@gmail.com>                                    Tue, Mar 3, 2020 at 12:15 PM
To: PMcClay@dcsphila.org

Thank you thank you thank you thank you. I can't express gratitude enough.

Sent from my iPhone

**Patricia McClay** <PMcClay@dcsphila.org>                                    Tue, Mar 3, 2020 at 12:28 PM
To: Nikki Yarbrough <nyabrou1@gmail.com>

No need to thank me.  You are a great employee and I would hate to lose you and your great enthusiasm.  Keep doing great work and remember our policies and procedures.  Also, all of your benefits have been reinstated.  Have a great day on purpose.

**Nikki Yarbrough** <nyabrou1@gmail.com>                                    Tue, Mar 3, 2020 at 12:33 PM
To: Patricia McClay <PMcClay@dcsphila.org>

Thanks again.

Sent from my iPhone

*Exhibit E*

*Meeting Request* 🔴 *about Martin*

## Conversation

**Patricia McClay** <PMcClay@dcsphila.org>

Wed 7/8/2020 4:09 PM

**To:** Nikkyeea Yabrough <NYabrough@dcsphila.org>

Hello Nikky,

Can you make some time to speak with me tomorrow?  I have a conference call tomorrow at 11:00 am, so I am available at 10:00 am or after 1:00 pm.  Let me know what time works best for you.  Thanks

Patricia McClay, M.A.
**HR Director**



**DIVERSIFIED COMMUNITY SERVICES**
**Mamie Nichols Center**
**1529 South 22nd Street**
**Philadelphia, PA 19146**
**215-336-5505 X339 (P)**
**215-336-5527 (F)**
pmcclay@dcsphila.org
**For more on DCS services & events:**
*Like us!* www.facebook.com/dcsphila
*Follow us!* www.twitter.com/dcsphila_org
*Visit us!* www.dcsphila.org

*"You can get everything in life you want; if you help enough other people get what they want."*   *Zig Ziglar*

Pat "Why are you helping him"

Martin didn't want to cheat the system

Following this meeting Martin WAS let go,

## Default and Delinquent client case status

*Exhibit F*

Nikkyeea Yabrough <NYabrough@dcsphila.org>
Thu 9/10/2020 1:57 PM
**To:** Patricia McClay <PMcClay@dcsphila.org>; Martin Lewis <mlewis@dcsphila.org>

📎 1 attachments
Martin DND Clients 2019-2020.xlsx;

Hi Pat,

Martin asked that I forward this excel sheet with all his client's folders that is in his office.
He will be giving you a hard copy when he meets with you tomorrow.  He's also requesting a time you
two can meet.

Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 310
nyabrough@dcsphila.org

*No response.*

*List of Martin Clients and case statuses upon his leaving via laid off.*



**DCS Default & Delinquent**
**Clients of Martin Lewis**
**11/2019-09/2020**

| Name | Date | Type of Client | Status as of 9/10/2020 | Date of last contact |
|---|---|---|---|---|
| Nafis Austin | 9/8/2020 | Mortgage default/Foreclosure | Owes 2019 Income tax returns | 9/10/2020 |
| James Carunchio | 8/14/2020 | Mortgage default/Foreclosure | Owes hardship Letter/Waiting for status of grant request from PHFA | 9/7/2020 |
| Seray Son | 8/28/2020 | Real Estate Taxes | Resolved | 9/8/2020 |
| Rochelle Barnes | 9/1/2020 | Mortgage default/Foreclosure | Loan MOD sent into servicer/awtg response | 9/9/2020 |
| Mia Ford | 4/1/2020 | Mortgage default/Foreclosure | Resolved/ payment Plan with lender | 8/31/2020 |
| Elizabeth Rementer RE: Vincent Versace | 4/22/2020 | Mortgage default/Foreclosure | Intake done 4/22/2020 while office was closed due to COVID-19.  Since then client hasn't returned for services.  Intake incomplete/ Letter sent 7/21/2020 | 7/21/2020 |
| Byshiea McNeal | 3/5/2020 | Mortgage default/Foreclosure | Intake done 3/5/2020 while office was closed due to COVID-19.  Since then client hasn't returned for services.  Intake incomplete/ Letter sent 7/20/2020 | 7/20/2020 |
| Lisabell Negron | 6/24/2020 | Mortgage default/Foreclosure | Intake was done 6/24/2020 while office was closed due to COVID-19.  Client was to return to complete intake. After lettwas sent 7/20/2020, Client infromed us her case has been resolved. | 8/3/2020 |
| Lataya Parker Berhannann | 1/8/2020 | Mortgage default/Foreclosure | Client denied HEMAP. 8/31/2020 request loan MOD packet from servicer | 8/31/2020 |
| Kim Holmes-Beauvias | 7/28/2020 | Mortgage default/Foreclosure | Forbearance approved/ Applied for PHFA grant awtg a response | 9/10/2020 |
| Linda Oliver | 12/23/2019 | Taxes | Awtg outcome from City of Philadelphia Revenue department/ Case status unknown.  Letter sent 3/10/2020 | 3/10/2020 |
| Bernadette Wilson | 12/16/2019 | Mortgage default/Foreclosure | Resolved/Approved for HEMAP | 1/30/2020 |

Exhibit 2

| Name | Date | Type | Notes | Date |
|---|---|---|---|---|
| Cassandra Richardson | 2/14/2020 | Mortgage default/Foreclosure | Filed Chapter 7 bankruptcy/Case file still open TBD | 3/20/2020 |
| Carrinia Woodson | 1/13/2020 | Mortgage default/Foreclosure | Client refused to apply for HEMAP/ looking to sale her home | 3/27/2020 |
| Lena Sanders | 8/25/2020 | Mortgage default/Foreclosure | Client being reveiwed for loan MOD | 9/8/2020 |
| Remona Gary | 2/19/2020 | Mortgage default/Foreclosure | Client being reveiwed for loan MOD | 9/3/2020 |
| Michael & Diane Blaney | 4/22/2020 | Mortgage default/Foreclosure | Forbearance approved | 8/26/2020 |
| Valerie Bell | 1/23/2020 | Mortgage default/Foreclosure | Awtg Status of HEMAP/ letter sent to client for follow up 3/10/2020 | 3/10/2020 |
| Sylvia Davis | 1/28/2020 | Taxes | Awtg outcome from City of Philadelphia Revenue department/ Case status TBD | 2/11/2020 |
| Takeesha Day | 8/31/2020 | Mortgage default/Foreclosure | Awtg outcome of loan MOD | 8/31/2020 |
| Juanita Digiannantonio | 3/16/2020 | Mortgage default/Foreclosure | Referred to CLS awtg outcome from meeting CLS and husnands attorney | 9/3/2020 |
| Pierre Prioleau | 7/8/2020 | Mortgage default/Foreclosure | Lender offering Forbearance/Client not responsive | 8/27/2020 |
| Keith Wilkes | 11/26/2019 | Mortgage default/Foreclosure | Client approved for HEMAP | 8/27/2020 |
| Haroon Bashir | 12/3/2019 | Mortgage default/Foreclosure | HTF grant approved mortage bought current | 12/19/2020 |
| Evelyn Coates | 12/30/2019 | Mortgage default/Foreclosure | Denied both HEMAP and HTF/ Client hasn't returned/ Letter sent 3/16/2020 | 3/16/2020 |
| Francisco Dejesus | 8/4/2020 | Mortgage default/Foreclosure | Awtg grant request from PHFA | 8/31/2020 |
| Cindy Ingram | 1/16/2020 | Mortgage default/Foreclosure | Awtg outcome court hearing from workman comp/due to pandemic status of court unknown | 1/22/2020 |
| Enid Rojas | 12/27/2019 | Mortgage default/Foreclosure | Approved for HEMAP/ Client declined HEMAP and bought mortgage current | 1/22/2020 |
| Stephan Jackson/Alice George | 1/27/2020 | Mortgage default/Foreclosure | Client was able to bring mortgage current/Resolved | 2/26/2020 |
| Phetsamone Phanthavong | 1/10/2020 | Mortgage default/Foreclosure | Client approved for HEMAP after appeal/Resolved | 9/10/2020 |
| Rashonda Eaton | 3/2/2020 | Mortgage default/Foreclosure | Client never came is but Client was approved for Trial MOD during diversion court | 3/26/2020 |
| Sheila Emerson | 1/6/2020 | Mortgage default/Foreclosure | Approved for HEMAP/Resolved | 2/12/2020 |

| Name | Date | Issue | Status | Date |
|---|---|---|---|---|
| Sharon Fisher | 12/30/2019 | Mortgage default/Foreclosure | Approved for HEMAP/Resolved | 4/22/2020 |
| Jasenia Fuentes | 1/23/2020 | Mortgage default/Foreclosure | Client never returned/ letter sent 2/18/2020 | 2/18/2020 |
| Annie Holmes | 2/3/2020 | Mortgage default/Foreclosure | Approved for Loan MOD/Resolved | 9/10/2020 |
| Fannie Stallworth | 3/11/2020 | Reverse Mortgage/Delinquent property taxes | Client had aggreement with servicer to catch up taxes/resolved | 4/3/2020 |

*Exhibit G*

PA    Subscribe

**Accurate. Immediate. Essential. Subscribe today for news you need now.**

Advertisement

*Article one*

Pennsylvania Real-Time News

# Pa. misses deadline to spend $108M in rent, mortgage relief from CARES Act

Updated Dec 19, 2020; Posted Dec 18, 2020



Pennsylvania barely spent one-third of $175 million rent and mortgage relief funds through CARES Act money, despite applications from hundreds of thousands of tenants and landlords to use it.

 Please support the journalism you rely on.

*Spotlight PA* *is an independent, non-partisan newsroom powered by The Philadelphia Inquirer in partnership with PennLive/The Patriot-News, TribLIVE/Pittsburgh Tribune-Review, and WITF Public Media. Sign up for our free newsletters.*

*Story by Charlotte Keith of Spotlight PA*

HARRISBURG — Pennsylvania tenants and homeowners missed out on roughly $108 million of $175 million in federal coronavirus relief because state programs distributing the funding made it too hard to access, Spotlight PA has found. The remaining money will be redistributed to the state's Department of Corrections.

Advertisement

Over the summer, Pennsylvania created two new housing programs to spend money it received under the federal Coronavirus Aid, Relief, and Economic Security Act: $150 million for rent relief and $25 million for mortgage help. Thousands of struggling families applied up until an extended Nov. 4 deadline, as coronavirus shutdowns led to layoffs, lost wages, and missed rent and mortgage payments. Local governments and nonprofits administering the funds were inundated with phone calls and emails from people pleading for help with the demanding application processes.

Nonetheless, the deadline to pay out all $175 million was Nov. 30 and roughly $108 million was not used, according to the Pennsylvania Housing Finance Agency, which oversaw both programs and was still finalizing the precise numbers on Friday. The legislature voted in November to redirect any remaining CARES Act funds from these and other programs to the Department of Corrections. The money will go toward payroll expenses for public safety and health care employees, "or similar employees whose services are substantially dedicated to mitigating or responding to the covid-19 public health emergency."

Advertisement

*exhibit 6³*

"It's horrible to know that the state did such a poor job of helping people," said Patty Torres, organizing director at Make the Road Pennsylvania, a Latinx advocacy group.

**NEWSLETTER**

Get all of the news and accountability journalism you need from Spotlight PA.

**Sign Up**

The $150 million rent relief program was meant to help both landlords and tenants, covering up to six months' rent for those who had fallen behind because of the pandemic. The money was paid directly to landlords, who had to agree to take part.

Advertisement

But the program was hindered by a cap on the assistance each applicant could receive, $750 a month — significantly less than the median rent in some parts of the state. The program also required that landlords forgive any other outstanding rent above that amount. As a result, many refused to participate.

Furthermore, tenants had to prove that they had become unemployed, or lost at least 30 percent of their income, since March 1. Many struggled to provide the required documentation, including pay stubs, from employers that had shut down or gone out of business.

The Pennsylvania Housing Finance Agency raised these concerns with legislative leaders in July, shortly after the program launched.

*CORONAVIRUS COVERAGE*

| *LIVE UPDATES* | *FULL COVERAGE* | *VIRUS TRACKER* |
| --- | --- | --- |

Advertisement

**PA** Please support the journalism you rely on.

*exhibit 64*

But it was not until October that the Republican-controlled House unanimously approved a bill introduced by Rep. Sue Helm (R., Dauphin) that would have made last-minute fixes to the program, simplified the application process, and given Pennsylvanians more time to apply. The bill did not advance in the Senate, where Republicans also hold the majority.

Some requirements were eventually relaxed by Gov. Tom Wolf, allowing landlords and tenants to enter into payment plans for rent outside of the $750 payments.

Then there was a late surge in applications, but not enough time to process them all before Nov. 30, said Bryce Maretzki, director of policy and planning at the Pennsylvania Housing Finance Agency.

Advertisement

"All the counties could probably have continued to get more funds out," Maretzki said. "The rush at the end in the last 30 days showed that there really is a significant amount of unmet need still."

Both programs paid out less than half of the funding allocated, underscoring the perils Pennsylvania faced in rapidly creating programs from scratch to distribute $2.6 billion from the CARES Act.

The problem was not a lack of demand for the money.

An estimated 240,000 Pennsylvania families could face eviction in January, unless a federal ban on evictions for non-payment of rent is extended. Congress is nearing agreement on a $900 billion relief package that would include $25 billion in emergency rent assistance and extend the eviction ban until the end of January. It's not clear whether that money could come soon enough to stave off what advocates warn could be a surge of eviction cases in the new year.

In November, as the state entered budget negotiations, it still had $1.3 billion in leftover CARES Act money,

**PA** Please support the journalism you rely on.

The state must spend all its CARES Act funding by the end of the year.

Case 2:21-cv-05114   Document 1   Filed 11/19/21   Page 38 of 96   exhibit
&5

One reason for the change was concern that counties would not be able to meet that deadline, said Jason Gottesman, a spokesperson for House Republicans.

States are not allowed to use funding from the CARES Act to fill budget holes caused by revenue shortfalls, only for additional spending related to the pandemic.

Guidance from the U.S. Treasury, however, says that states can "presume" that payroll costs for public safety employees "are payments for services substantially dedicated to mitigating or responding to the COVID-19 public health emergency."

Jared Walczak, vice president of state projects at the nonprofit Tax Foundation, said Pennsylvania's use of CARES Act funding appears similar to the approach taken by other states.

QUICK FACTS
## What you should know about coronavirus

*Updated: April 5, 2021 — 8:49 AM*

### Slow the spread
Masks, hand-washing and social distancing are still the best ways to prevent infection. We have COVID-19 Tips to keep you safe and sane. You can also check our social distancing dos and donts, and our mas resources.

### Where can I get the vaccine?

**READ MORE ⌄**

"If Treasury were to audit and reject these allocations, Pennsylvania could have to return the disputed funds," he told Spotlight PA. "But from what I see in how Pennsylvania's spending this, it's in line with the way a lot of other states are interpreting the Treasury guidance and is unlikely to prompt such a response."

Even the $150 million allocated for rent relief falls well short of the estimated $958 million in back rent that Pennsylvania tenants will owe come January, according to a study commissioned by the National Council of State Housing Agencies.

"We did as much as we could given what we had to work with," Maretzki said. "There was far more demand for the money than there was assistance."

*Ed Mahon of Spotlight PA contributed to this report.*

**100% ESSENTIAL:** *Spotlight PA relies on funding from foundations and readers like you who are committed to accountability journalism that gets results. Become a member today at spotlightpa.org/donate.*

**More from PennLive**

**PA**  Please support the journalism you rely on.

Thursday, April 8, 2021

*exhibit H*

**Today's Paper** 🔍

**SIGN IN / SIGN UP**

Subscribe | Support Local
News SIGN IN / SIGN UP

🔍    NEWS    SPORTS    BUSINESS    OPINION    POLITICS    ENTERTAINMENT    LIFE

ADVERTISEMENT

*Article 2*

Opinion                                                                                    ↗

# We should be fired up about Scrooge-like $600 federal stimulus checks and Pa.'s bungling of housing aid | Jenice Armstrong

Pennsylvanians behind on their rent and mortgages will have to bide their time. Just like they will have to wait on those paltry stimulus checks.

ADVERTISEMENT



Alastair Sim as the definitive Ebenezer Scrooge in the 1951 film, "A Christmas Carol."
American Movie Classics / MCT

 by Jenice Armstrong | Columnist
Updated Dec 21, 2020

Those onetime $600 federal stimulus checks that Congress was voting on Monday night are unbelievably miserly.

It took members nine months to come up with a federal relief package and *that's* what they came up with? Shameful.

But Republican Sen. Pat Can't-Leave-Office-Soon-Enough Toomey and his fellow GOP Scrooges can congratulate themselves. They seemed to be on their way to blocking Americans from even getting what they got last spring. Now, Toomey and the others can return to their home districts and enjoy sumptuous Christmas feasts while many Americans go without. They'll be waiting on their checks and trying to figure out ways to stretch $600.

Congress members with their cushy salaries and health care will be fine, though.

ADVERTISEMENT

Same with officials in Pennsylvania who failed to distribute $108 million of federal money to help renters and homeowners before the Nov. 30 deadline expired.

Now those funds that were made available through the CARES Act are to be reallocated to the Pennsylvania Department of Corrections, of all things.

Yes, you read that correctly.

That's a staggering amount of money to let slip away, particularly when so many people are struggling to stay in their homes.

ADVERTISEMENT

exhibit #3

**» READ MORE: Pa. misses deadline to spend $108M in rent, mortgage relief from CARES Act**

Nikkyeea Yabrough is an intake specialist at a local nonprofit that helps people retain their homes and knows better than most how devastating it is that the $108 million isn't an option anymore.

Every day, she's on the phone listening as callers explain their plight and beg for help.

"I get those type of calls eight to 10 times a day," Yabrough told me. "People with children, senior citizens, people that were laid off because of the pandemic, and we don't have funds or the resources to help those people."

So, when she learned about Pennsylvania's having bungled the distribution of the rent and mortgage assistance, she got irate and posted a video about it that has since gone viral.

*exhibit H 4*

"Everybody's posting up about toy drives, coat drives. You have so many different locations giving out food boxes … these people are lining up for these items because they need it. Not out of greed. They are hungry and unable to pay bills and Pennsylvania lost $108 million in federal aid," Yabrough says on the video, reposted on NoGunZone.com.

"I don't know about y'all, but I'm a little pissed off about that," she added. "It's not sitting right with me. Because when I go to work on my day job … and the phone rings, I don't know what to say to people when they call and say they need help. The money isn't there."

I've been getting an earful about how Republican inaction in the Senate caused the breakdown.

Originally, $175 million of the state CARES Act federal allotment had been designated for rent and mortgage relief.

"The key thing that happened was we secured $175 million in the spring. The program had some problems in it. [The Pennsylvania Housing Finance Agency] came up with fixes to all of those issues," explained State Sen. Art Haywood (D., Phila.), who helped lead the

negotiations. "It was proposed to the legislature. It was ready to go in September. No action. No action. No action.

"Finally, the governor stepped in with executive action to address a couple of the problems. Then, the House sent to the Senate a unanimous piece of legislation that included all of the changes that PHFA had been seeking since the summer. It got to the Senate. The Senate leadership did not take it up for a vote. And the balance of the money went into the budget."

To be more specific, the budget for the state Department of Corrections, which has been hard hit by COVID-19.

"We did what we needed to do, but the Republicans sat on it," said State Sen. Vincent Hughes (D., Phila.).

"Thank God we've got federal intervention that occurred," he added, referring to the federal aid package agreed to over the weekend by Congress. "We believe there will be some money there to help people out of problems with evictions and foreclosures."

Meanwhile, Pennsylvanians behind on their rent and mortgages will have to bide their time. Just like they will have to wait on those paltry stimulus checks. Here's hoping the Ghost of Christmas Present will haunt those responsible for the fiasco this holiday season.

Published Dec. 21, 2020

 **Jenice Armstrong** ✉ 🐦

*exhibit H6*

Jenice is a metro columnist for the Philadelphia Inquirer and Daily News covering mostly local topics but sometimes weighing in on national news as well.

**About Us**

About The Inquirer

Advertise

Contact Us

Licensing & Permissions

Photo Reprints

Newspapers in Education

Jobs & Internships

Inquirer Events

Acel Moore Workshops

Newsroom Staff

**News & Info**

News

Sports

Entertainment

Business

Health

Food

Life

Opinion

Archives

Special Reports

**Marketplace**

Subscribe

Inquirer Store

Find a Home

Job Listings

Special Sections

All Classifieds

Gift Subscriptions

**e-Editions**

The Inquirer

The Daily News

**Mobile Apps**

Inquirer News

Philly Sports Now

© 2021 The Philadelphia Inquirer, LLC

**Terms of Use  /  Privacy Policy  /  Cancellation Policy  /  California Notice  /  California residents do not sell my data request**
**California residents do not sell my data request**

exhibit

#7





**AutoScan Batch Card – 1 (Next Document)**

*My Appeal* — *Exhibit I'*



## PETITION FOR APPEAL

**pennsylvania**
DEPARTMENT OF LABOR & INDUSTRY
UNEMPLOYMENT COMPENSATION BOARD OF REVIEW

**IMPORTANT! — READ THE INFORMATION ON THE REVERSE OF THIS FORM BEFORE FILING AN APPEAL.
EXPRESS APPEAL FILING INFORMATION IS INCLUDED.**

If you want to appeal a notice of determination, you must file by the last date to appeal as indicated on the determination. To ensure prompt filing, use the express link **www.uc.pa.gov/appeals**, complete the UC-46B, Petition for Appeal, and file directly to the electronic resource account of the UC Service Center listed on your determination. You may also file the appeal by fax or mail by completing Section I below and returning this form in accordance with the appeal instructions on the notice of determination.

**FOLLOW THE APPEAL INSTRUCTIONS CAREFULLY.**

### SECTION I: TO BE COMPLETED BY PERSON FILING APPEAL

CLAIMANT'S NAME AND ADDRESS:
Nikkyeea S Yarbrough
2522 S 62nd Street #2F
Philadelphia, PA 19142-3117

CMPLC-Yabrough Vs Bullock Etal

21050230800005

DATE OF DETERMINATION BEING APPEALED_____03/01/2021_____

CLAIMANT'S SOCIAL SECURITY NO._____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_____

CLAIMANT'S TELEPHONE NO. ( 267 ) 257 - 7362

EMPLOYER'S NAME AND ADDRESS WHERE THE CLAIMANT LAST WORKED:
Diversified Community Services
1529 S 22nd Street
Philadelphia, PA 19146

EMPLOYER'S TELEPHONE NO. ( 215 ) 336 - 5505

REASON(S) FOR DISAGREEING WITH THE DETERMINATION AND FILING THIS APPEAL ARE:

See Attached

I certify that all information I have provided in this document is correct and complete. I acknowledge that false statements in this document are punishable pursuant to 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

See Attached
_____
**NAME OF PERSON FILING APPEAL**

### SECTION II: TO BE COMPLETED ONLY BY THE UC SERVICE CENTER

APPEAL FILED ON_____03/06/2021_____    REFEREE OFFICE_____Philadelphia_____    APPEAL NO.___21-09-A-3379___

APPEAL FILED BY:    CLAIMANT ☒    EMPLOYER ☐    EMPLOYMENT SECURITY ☐

APPEAL RECEIVED BY: UCSC ☒   PA CAREERLINK® ☐   PERSONALLY DELIVERED ☐   POSTMARKED ☐   FAXED ☐   OTHER ☒

TYPE CLAIM: UC ☒ UCFE ☐ UCX ☐ EB ☐ DUA ☐ TRA ☐ TRADE ACT PETITION NO._____ OTHER_____ NAFTA PETITION NO._____

APPELLANT REQUIRES ASSISTANCE BECAUSE OF DISABILITY WITH:   HEARING ☐   SPEECH ☐   VISION ☐
FOR THE FOLLOWING SPOKEN LANGUAGE_____   OTHER_____

ELIGIBLE SECTION(S)_____   INELIGIBLE SECTION(S) _____402(E)_____

APPLICATION FOR BENEFITS DATE_____12/27/2020_____   CLAIM WEEK(S) RULED ON _____CWE 01/09/2021_____

_____DST_____   UC SERVICE CENTER _____Scranton_____
**SIGNATURE OF APPEAL CLERK**

NAME AND ADDRESS OF EMPLOYER(S) AND ANY OTHER PARTY INVOLVED IN THE CLAIMANT'S ELIGIBILITY
**EMPLOYER'S ADDRESS**                    **EMPLOYER'S REPRESENTATIVE (IF ANY)**

Diversified Community Services
1529 S 22nd Street
Philadelphia, PA 19146

Diversified Community Services c/o Equifax
P.O. Box 182366
Columbus, OH 43218-2366

UC-46B REV 04-14 (Page 1)

*Exhibit I*

**Fabricatore, Maria**

208 48 2713

| From: | UC Appeal Form (46B) - UC Service Center Name <no-reply@pa.egov.com> |
|-------|----------------------------------------------------------------------|
| Sent: | Saturday, March 6, 2021 7:00 PM |
| To: | LI, UCP-CL-Appeals-SCR |
| Subject: | [External] UC Appeal Form (46B) - UC Service Center Name |

**ATTENTION:** *This email message is from an external sender. Do not open links or attachments from unknown sources. To report suspicious email, forward the message as an attachment to CWOPA_SPAM@pa.gov.*

| Field | Value |
|-------|-------|
| Service Center | UCAPPEALSCRANTON@PA.GOV |
| Claimant First | Nikkyeea |
| Claimant MI | |
| Claimant Last | Yarbrough |
| Claimant Address | 2522 s 62nd Street |
| Claimant City | Philadelphia |
| Claimant State | PA |
| Claimant Zip | 19142 |
| Determination Date | 03/01/2021 |
| Claimant SSN | 2713 |
| Claimant Phone | 267-257-7362 |
| Claimant Email Address | nyabrou1@gmail.com |
| Employer Name | Diversified Community Services |
| Employer Address | 1529 s 22nd street |
| Employer City | Philadelphia |
| Employer State | PA |
| Employer Zip | 19146 |
| Employer Phone | 214-336-5505 |
| Determination Disagreement | In response to code of conduct violation: Please refer to news article "PA MISSES DEADLINE TO SPEND 108M IN RENT AND MORTGAGE REFLIEF FROM CARES ACT" DATE 12/19/2020 ON 12/20/2020 I posted a video in response to a news article I read online. My video response had no direct affiliation, was not connected or attached to any matters of business involving Diversified Community Services. The article itself and contents in the article were published to the public. No trade secrets or violation of any privacy laws were made. Refer to page 40 of the employee handbook 'social networking' "IN GENERAL WHAT EMPLOYEES DO ON THEIR OWN TIME IS THEIR PERSONAL BUSINESS." DCS name or logo nor any funders was mentioned or used in the video post. Matters of the article discussed politicians of Pennsylvania and the CARES ACT. In response to insubordination: 1- I did not refuse or disobey any person of authority. The video was posted to my social media account on 12/20/2020. During the ten days leading up to 12/30/2020 I was not approached, warned, or given any notice written or verbally that the content of the video was |

RECEIVED
MAR 08 2021
SCRANTON UCSC

MPA

| Field | Value |
|---|---|
| | inappropriate by HR or my direct supervisor. If so, I would have simply removed the video content off my page. 2- In response to being argumentative, hostile and belligerent to the executive director, the ZOOM meeting lasted roughly two minutes. I responded with two questions to Mr. Bullock and he retaliated with "YOU'RE FIRED" meeting was ended. |
| Certification | true |
| Certification Signature | Nikkyeea Yarbrough |
| Appeal Filed On | |
| Referee Office | |
| Appeal Number | |
| Appeal Filed By | |
| Appeal Received By | |
| Type Claim | |
| Trade Act Petition Number | |
| Other | |
| NAFTA Petition Number | |
| Assisted Appellant Disability | |
| Spoken Language | |
| Other Disability | |
| Eligible Sections | |
| Ineligible Sections | |
| Benefits Application Date | |
| Claim Weeks Ruled On | |
| Appeal Clerk Signature | |
| UC Service Center | |
| Employer Name and Address | |
| Employer Representative | |

2

Exhibit I 4

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW
Department of Labor & Industry
Commonwealth of Pennsylvania

UC-53(9) REV 7-09

| | |
|---|---|
| APPEAL NUMBER | 21-09-A-3379 |
| DATE MAILED | 4/1/2021 |
| SSN | 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 |

# NOTICE OF HEARING

**CLAIMANT**

By Telephone - 267-257-7362

NIKKYEEA S YARBROUGH
2522 S 62ND ST #2F
PHILADELPHIA PA  19142-3117
US

Exh. Y

**EMPLOYER**

By Telephone - 800-829-1515

DIVERSIFIED COMMUNITY
SERVICES/EQUIFAX
PO BOX 182366
COLUMBUS OH 43218-2366
US

— Notice is hereby given to those identified above that a hearing will be held as follows on an appeal pending before the Unemployment Compensation Board of Review:

| **HEARING DATE & TIME** | **HEARING LOCATION** | **REFEREE (and Office)** |
|---|---|---|
| Wednesday 4/21/2021 10:30 AM Eastern Time | **THIS HEARING IS SCHEDULED TO BE HELD BY TELEPHONE. DO NOT REPORT IN PERSON FOR THIS HEARING.** | Rosaire Betti PHILADELPHIA REFEREE OFFICE Phone: 215-560-2504 Fax:  215-560-2816 Email: ra-li-ucbr-Philadelp@pa.gov |

**SPECIFIC ISSUES** to be considered in this appeal — See attached list of issues for additional information.

# 17 - Section 402(e) – Whether claimant's unemployment was due to discharge or temporary suspension from work for willful misconduct connected with employment.

# 15 - Section 402(b) – Whether claimant's unemployment was due to voluntarily leaving work without cause of necessitous and compelling nature.

# 10 - Section 401(d)(1),(2) – Whether the claimant was able and available for suitable work.

OTHER ISSUES that may be considered — See attached list of issues for additional information.

A complete List of Issues (UC-58) that may arise in this appeal is enclosed with this notice.

A translation document UC-1627 is enclosed with this notice.

A return post card regarding translation UC-53P is enclosed with this notice.

**INSTRUCTIONS:**

To ALL PARTIES—
* If you have documents to be entered or testified from at this hearing, you must submit them to the Referee Office listed above at least five (5) days BEFORE THE HEARING.

To EACH PARTY SCHEDULED to participate IN PERSON—
* You MUST report 15 minutes prior to the designated hearing time to review the file for this appeal. Please bring all documents relevant to this appeal with you.

To EACH PARTY SCHEDULED to participate BY TELEPHONE—
* You must contact the Referee Office listed above BEFORE THE HEARING if your telephone number listed on this notice is INCORRECT or if no telephone number appears on this notice.
* ON THE HEARING DATE please be by the telephone and keep the line free at least fifteen (15) minutes before the scheduled time. Have this notice and all related documents available at that time.
* Please be advised that the Referee will be calling parties on a telephone line that will not display the originating telephone number.  Some telephones have the capability of blocking incoming calls for which no originating number is displayed. If your telephone blocks such calls and if you expect to participate in the hearing by telephone, **it is your responsibility to ensure that you are able to accept the call to participate in the hearing.**
Regulations Governing Telephone Hearings (BD-54) is enclosed with this notice.

Claimant — NIKKYEEA S YARBROUGH                                      Appeal — 21-09-A-3379

If you report to the referee's office in person for the hearing or if you report in person prior to the hearing to review the case file or submit or retrieve documents you must provide some form of identification, which may include this notice.

**All hearings are recorded.**

---

**All parties named on this notice have the right to be represented by counsel.**
**See important notice on reverse side regarding representation and other information about the hearing.**
Each party must decide, make the necessary arrangements, and assume any expense.
A copy of this hearing notice may also be provided to the Unemployment Compensation Authorities.

**NOTE:** If you elect to respond by email please be careful to note the <u>exact</u> email address as it appears
on this notice. The UC Board of Review cannot be responsible for misdirected emails.
**Please be aware that participation in hearings by email is <u>not</u> permitted.**

## Purpose of Hearing

The Referee elicits testimony and gathers all facts relating to the case and has no special or personal interest in the matter. The hearing is not a "roundtable" discussion.  The Referee will limit the testimony, questioning and evidence to the issues before the Referee.

You should attend the hearing to protect your rights.  You have the right to:
- present the testimony and evidence of the party and witnesses.
- question opposing parties and witnesses.
- be represented by an attorney or other advocate.

## Representation at the Hearing

Under the provisions of Act 5 of 2005, you may represent yourself or you may be represented by an attorney or any other advocate of your choice throughout the appeal process.

Although hearings are informal, they involve witnesses, sworn testimony, cross-examination and rebuttals and also are recorded. Whether you are represented or not, the Referee endeavors to develop testimony regarding the pertinent facts and conduct a fair and impartial hearing.

**When you report for the hearing or if you wish to review your case file prior to the hearing you must provide some form of identification, which may include this notice.**

## Preparing for the Hearing

Organize the facts, circumstances and evidence relating to the appeal. Gather any documents you have that concern the case. You may wish to make copies of documents you intend to take to the hearing. If you wish to testify from a document at a telephone hearing, that document must be submitted to the Referee's office at least 5 days before the hearing. Any documents that are made part of the hearing record cannot be returned to you.

You may have witnesses testify in your behalf. Be sure to have witnesses who directly observed, heard, or participated in the matters about which they are to testify. What a witness learned second-hand may not, depending on the circumstances, be considered at the hearing. You must notify such witnesses about the date, time and place of the hearing. Also, you must arrange for them to be present and to provide any relevant documents. If a witness refuses to appear or provide documentary evidence, you may submit a written request in advance of the hearing to the Referee for a subpoena, as outlined below.

## Do You Need Assistance? — ¿Necesita Ayuda? – Póngase inmediata mente en contacto con la oficina de arbitros llamando al número de teléfono que aparece en éste aviso.

If you require assistance because of a disability with hearing, speech and/or vision or you need an interpreter for your own language other than English, **contact the Referee's office listed on this notice as soon as possible**. The Board is responsible to provide an appropriate device or qualified interpreter whose credentials are certified for quasijudicial proceedings. Also, the Board covers the costs required to provide this assistance.

Exhibit I6

Claimant — NIKKYEEA S YARBROUGH                                    Appeal — 21-09-A-3379

If you report to the referee's office in person for the hearing or if you report in person prior to the hearing to review the case file or submit or retrieve documents you must provide some form of identification, which may include this notice.

**All hearings are recorded.**

---

**All parties named on this notice have the right to be represented by counsel.**
**See important notice on reverse side regarding representation and other information about the hearing.**
Each party must decide, make the necessary arrangements, and assume any expense.
A copy of this hearing notice may also be provided to the Unemployment Compensation Authorities.
**NOTE:** If you elect to respond by email please be careful to note the <u>exact</u> email address as it appears
on this notice. The UC Board of Review cannot be responsible for misdirected emails.
**Please be aware that participation in hearings by email is <u>not</u> permitted.**

## Purpose of Hearing

The Referee elicits testimony and gathers all facts relating to the case and has no special or personal interest in the matter. The hearing is not a "roundtable" discussion.  The Referee will limit the testimony, questioning and evidence to the issues before the Referee.

You should attend the hearing to protect your rights.  You have the right to:
- present the testimony and evidence of the party and witnesses.
- question opposing parties and witnesses.
- be represented by an attorney or other advocate.

## Representation at the Hearing

Under the provisions of Act 5 of 2005, you may represent yourself or you may be represented by an attorney or any other advocate of your choice throughout the appeal process.

Although hearings are informal, they involve witnesses, sworn testimony, cross-examination and rebuttals and also are recorded. Whether you are represented or not, the Referee endeavors to develop testimony regarding the pertinent facts and conduct a fair and impartial hearing.

**When you report for the hearing or if you wish to review your case file prior to the hearing you must provide some form of identification, which may include this notice.**

## Preparing for the Hearing

Organize the facts, circumstances and evidence relating to the appeal. Gather any documents you have that concern the case. You may wish to make copies of documents you intend to take to the hearing. If you wish to testify from a document at a telephone hearing, that document must be submitted to the Referee's office at least 5 days before the hearing. Any documents that are made part of the hearing record cannot be returned to you.

You may have witnesses testify in your behalf. Be sure to have witnesses who directly observed, heard, or participated in the matters about which they are to testify. What a witness learned second-hand may not, depending on the circumstances, be considered at the hearing. You must notify such witnesses about the date, time and place of the hearing. Also, you must arrange for them to be present and to provide any relevant documents. If a witness refuses to appear or provide documentary evidence, you may submit a written request in advance of the hearing to the Referee for a subpoena, as outlined below.

## Do You Need Assistance?  —  ¿Necesita Ayuda? – Póngase inmediata mente en contacto con la oficina de arbitros llamando al número de teléfono que aparece en éste aviso.

If you require assistance because of a disability with hearing, speech and/or vision or you need an interpreter for your own language other than English, *contact the Referee's office listed on this notice as soon as possible.* The Board is responsible to provide an appropriate device or qualified interpreter whose credentials are certified for quasijudicial proceedings. Also, the Board covers the costs required to provide this assistance.

Claimant — NIKKYEEA S YARBROUGH                                    Appeal — 21-09-A-3379

*exhibit 1.1*

Any interested party at an appeal hearing must be able to deal effectively with both written evidence and oral testimony. If you cannot participate satisfactorily, it causes delay and/or misunderstanding of the decision.

**Requests** may be submitted to the Referee for the items listed below. Any request should provide the claimant's name and the appeal number, state the action requested and include specific reasons for the request, which may be mailed, faxed or emailed.

- **Subpoena** — If the witness refuses to appear or provide documentary evidence, you may request that a subpoena be issued to assure the requested presence at the hearing. The Referee will issue a subpoena if appropriate. **Requests for a subpoena must be made in writing.**

- **Continuance of Hearing** — If you cannot participate in the hearing for any reason, you may request a continuance (postponement) of the hearing. You should do this as soon as possible. The Referee will grant this only for "proper cause" and upon terms that he/she deems proper. If a continuance is granted, a rescheduling will follow. **Requests for a continuance must be made in writing.**

- **Withdrawal of Appeal** — If you wish to withdraw (discontinue) your appeal, you may request withdrawal. *Only* the party who filed an appeal may withdraw it, with the approval of the Referee before whom the appeal is pending. **Requests for withdrawals must be made in writing.**

- **Reopening after Scheduled Hearing** — If you are prevented from participating in the scheduled hearing because of a compelling reason, you may request to have the hearing reopened. You must set forth the specific reasons and circumstances that are alleged to constitute "proper cause" for non-appearance at the scheduled hearing.

  **Requests for reopening of the record must be made in writing.** It is important that you submit this request in writing as promptly as possible. If the Referee receives it *after* the decision is mailed to the parties, it is considered a request for further appeal to the Board. The Board then rules upon the request for further hearing. The written request may be mailed, faxed, emailed or delivered to the Referee Office.

  Mailed, faxed, or emailed requests for withdrawal of appeal or reopening of the record or any other written requests are to be sent to:

  PHILADELPHIA REFEREE OFFICE
  801 MARKET ST STE 4027
  PHILADELPHIA PA  19107-3119
  Fax: 215-560-2816
  Email: ra-li-ucbr-Philadelp@pa.gov

**NOTE:** If you elect to respond by email please be careful to note the <u>exact</u> email address as it appears on this notice.  The UC Board of Review cannot be responsible for misdirected emails.

**Auxiliary aids and services are available upon request to individuals with disabilities.**
**Equal Opportunity Employer/Program**

*Exhibit F.*

PHILADELPHIA REFEREE OFFICE
801 MARKET ST STE 4027
PHILADELPHIA PA 19107-3119

NIKKYEEA S YABROUGH
2522 S 62ND ST #2F
PHILADELPHIA PA 19142-3117



**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW**
Department of Labor & Industry
Commonwealth of Pennsylvania

APPEAL NUMBER  21-09-A-3379
DATE MAILED  04/26/2021
**FINAL DATE
TO APPEAL  05/11/2021**
SSN  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

# REFEREE'S DECISION/ORDER

CLAIMANT

NIKKYEEA S YABROUGH
2522 S 62ND ST #2F
PHILADELPHIA PA  19142-3117
US

EMPLOYER

DIVERSIFIED COMMUNITY
SERVICES/EQUIFAX
PO BOX 182366
COLUMBUS OH 43218-2366
US

---

**CLAIM:**

FILED: 12/27/2020

DETERMINATION/S ISSUED:  3/1/2021    BY:  SCRANTON UC SERVICE CENTER

    CLAIMANT DETERMINED UNDER UC LAW:  Ineligible  402(e)
    FOR WAITING WEEK ENDING:

    FOR COMPENSABLE WEEK/S ENDING:  1/9/2021

**APPEAL:**

FILED: 3/6/2021    BY:  Claimant

HEARING HELD: 4/21/2021   IN:  PHILADELPHIA, PA

    ATTENDED BY:  Claimant, Employer, Employer Representative

---

**ENCLOSURE:**  A translation document UC-1627 is enclosed with this notice.

**FINDINGS OF FACT:**

1.  Nikkyeea Yabrough ("claimant") was employed by Diversified Community Services ("employer") beginning on or about November 1, 2019 and her last date of work was December 30, 2020.

2.  The claimant's position was that of full time intake specialist.

3.  The employer had policies against:

    a.  Prohibiting employer business to accompany in which employees have their own financial interest; and

    b.  Representing or discussing the employer with the media without proper authorization; and

UC-59 REV 5-09

exhibit J³

Claimant — NIKKYEEA S YABROUGH                                    Appeal — 21-09-A-3379

      c.  Representing the employer in prohibited ways via social media posts.

4.  The executive director had a videoconference meeting via Zoom with the claimant plus a human resources representative intended to question and/or reprimand the claimant regarding a social media post that she made on December 21, 2020 plus a possible violation of the conflict of interest rules in a December 7 by posting her own business telephone number on the employer's social media account.

5.  During the December 30, 2020 meeting:

      a.  The director told the claimant her December 21 posting to her social media webpage portrayed the employer in a negative light; and

      b.  The claimant interrupted the director several times by repeating that she made the Decem

      c.  21 post to her personal social media page and did not mention the employer or her relationship to the employer in it; and

      d.  The director told the claimant at least twice to allow him to finish what he was saying, and, when she interrupted him again by stating it was her personal account, her replied that she was terminated.

**ISSUE**:  Is the claimant disqualified from receiving benefits under Section 402(e) of the Pennsylvania Unemployment Compensation ("UC") Act based on the separation from the employer?

**REASONING**:  Section 402(e) of the Pennsylvania UC Act provides that claimants shall be ineligible for compensation for any week in which their unemployment is due to a discharge or suspension from work for willful misconduct connected with the work. While the term "willful misconduct" is not defined in the Act, Pennsylvania courts in numerous decisions have considered it to include a deliberate violation of an employer rule or rules, a disregard of standards of behavior an employer has a right to expect of an employee, or negligence of such frequency or degree as to be evidence of an intentional disregard of the employer's interests or of the employee's duties. In appeal hearings involving discharged employees, the employer has the burden of establishing that the discharge was due to willful misconduct in connection with the work.

In this case, the claimant disputes that she interrupted or spoke over the director in the Zoom meeting. The employer witnesses credibly testified that she did, but, due to the nature of a video conference meeting, it is unclear whether this was intentional  or an artifact of the technology being used.  Also, even if she was aware that she was interrupting the executive director, and her behavior in that video conference may have been inappropriate, the record does not show that it warrants immediate termination.

Regarding the incidents that were to be the subject of the meeting, it is unclear what discipline the employer was going to impose for those incidents.  Whether they warranted termination, however, was not proven at the appeal hearing, because the employer did not show the specific content of what the claimant wrote in a posting and specifically how it affected the employer interest. Likewise, the employer did not establish through competent testimony or evidence that the claimant violated a conflict of interest rule by trying to link her own realty business with an employer program, or personally benefit from said program. On this record, therefore, her separation may not be considered disqualifying under Section 402(e).

**ORDER**:  The determination of the Unemployment Compensation Service Center under Section 402(e) of the Pennsylvania Unemployment Compensation Act is **REVERSED**; the claimant is **NOT DISQUALIFIED**

*exhibit J4*

Claimant — NIKKYEEA S YABROUGH                    Appeal — 21-09-A-3379

from receiving waiting week credit or compensation under said section beginning with the week ending January 9, 2021.


Rosaire Betti, Referee

kri - 9140

---

Pursuant to the provisions of the Law, this referee decision shall become final on the date it was mailed to the parties, unless any aggrieved party files a further appeal to the Pennsylvania Unemployment Compensation Board of Review within the fifteen (15) day appeal period.

**THE LAST DATE TO FILE AN APPEAL TO THIS DECISION IS 05/11/2021.**

**IF YOU WISH TO FILE A FURTHER APPEAL**

You have the right to file a further appeal to this decision within fifteen (15) days of the date of mailing. Your appeal must include the following information:  ►your name; ►the claimant's name and social security number; ►the date of the decision being appealed; ►the reason for appeal; ►the appeal number; ►your address.  Under the provisions of Act 5 of 2005, you may file your own appeal, or your appeal may be filed by an attorney or by any other advocate of your choice.

You may file your appeal by mail. If you file your appeal by mail, the appeal is filed as of the date of the U.S. Postal Service postmark or a U.S. Postal Service form 3817 (Certificate of Mailing) or a U.S. Postal Service certified mail receipt. If there is no U.S. Postal Service postmark, the date of filing will be the date of a postage meter mark on the envelope containing the appeal. If the appeal contains neither a postmark nor a postage meter mark, the date of filing will be the date recorded by the Department when the appeal is received. Your appeal should be mailed to the following address:

**Department of Labor & Industry**
**UC Board of Review, Room 1119**
**651 Boas Street**
**Harrisburg, PA 17121**

**You may file your appeal by common carrier.** If you file your appeal by common carrier, the appeal is filed on the date it is delivered to the common carrier as established by the records of the common carrier. You should use the above address to send your appeal by common carrier.

**You may file your appeal by fax.** If you file your appeal by fax, it must be received by the Department by 11:59 p.m. on the last day to appeal. The filing date will be determined by the date of receipt imprinted by the receiving fax machine. If there is no receipt date imprinted by the receiving fax machine, the sender's fax banner will control the date of filing. If neither date appears on the fax, the date of receipt recorded by the Department will serve as the date of filing. Your appeal should be **faxed** to the following number:

Claimant — NIKKYEEA S YABROUGH                                Appeal — 21-09-A-3379

717-346-4484

**NOTE:**  A party filing an appeal by fax is responsible for delay, disruption or interruption of electronic signals and readability of the document and accepts the risk that the appeal may not be properly or timely filed.

**You may file your appeal via electronic mail (email).** If you file your appeal by email, the appeal is filed on the date of receipt recorded by the Department's electronic transmission system. If you wish to file your appeal by email, forward your appeal information to the Department at:

<u>UCBoardAppeals@pa.gov</u>

**WARNING:**  Information submitted by email is not secure.

**NOTE:**  A party filing an appeal via the internet or electronic mail is responsible for using the proper format and for delay, disruption or interruption of electronic signals and readability of the document and accepts the risk that the appeal may not be properly or timely filed.

If you wish to file your appeal **in person**, you may do so at any CareerLink office during normal business hours on or before the last day to appeal shown above. The CareerLink office will forward your appeal to the UC Board of Review for processing.

*Auxiliary aids and services are available upon request to individuals with disabilities.*
*Equal Opportunity Employer/Program*

exhibit J6

Claimant — NIKKYEEA S YABROUGH                    Appeal — 21-09-A-3379

**ADDITIONAL INTERESTED PARTIES OR APPEARANCES AT HEARING**

exhibit K



**DIVERSIFIED COMMUNITY SERVICES**

# Diversified Community Services
## Corrective Action Form

Employee Name <u>Nikkyeea Yabrough</u>          Date: <u>01/01/2021</u>
Location / Department <u>Dixon House</u>

---

## CAUSE OF CORRECTIVE ACTION

☐ Tardiness          ☐ Not Following Directions   ☐ Absenteeism      X  Professional Conduct
☐ Unsafe Actions     ☐ Carelessness               ☐ Performance Below Standards
X Policy Violation (explain) <u>Professional Code of Conduct 1, 3, 6, 7,and 10; Rules of Conduct 7 and 8; Group I</u>
<u>Violation #8; and Group II Violation 2.</u>
☐ Other (explain)_____

**Details regarding this corrective action:** *See PIP – Performance Improvement Plan Attached – If applicable*
**Statement of the problem: (violation of rules, standards, practices or unsatisfactory performance.)**

Nikkyeea Yabrough is terminated for insubordination and violation of several rules of
conduct/profession code of conduct, including engaging in business conduct that is detrimental to
Diversified Community Services' (DCS) reputation.

DCS is a 501(c)(3) nonprofit funded primarily through grants and contracts from City and State
government. On December 21, 2020, a No Gun Zone Instagram post was brought to the Executive
Director's attention that was a repost of a video that Ms. Yabrough posted previously. In the video
posted on Ms. Yabrough's private business consulting page, Ms. Yabrough was critical of DCS (her
employer) and local elected officials. Ms. Yabrough, through the video, spread misinformation about a
CARES ACT mishap that had nothing to do with DCS, the Mayor, Councilmembers, or the Ward
Leaders that she criticized in the video. The critical video garnered more than 60,000 views.

Upon further review of Ms. Yabrough's private business Instagram page, she has DCS Intake
Specialist identified as one of her places of employment. On December 7, 2020, Ms. Yarbrough,
advertised on Instagram DCS's mortgage delinquency services, without acknowledgment, and
directed potential clients to her own private business number instead of acknowledging DCS and
directing clients to DCS. According to DCS policy, employees are expected to adhere to the highest
standards of personal and professional business ethics and to use common sense and good
judgement about the way they present themselves when on duty or when representing DCS. The
above-mentioned actions violated DCS Professional Codes of Conduct 1, 3, 6, and 10; DCS Rule of
Conduct 7; and DCS Social Networking Policy:

## Professional Code of Conduct

- #1 – Engaging in business conduct that is detrimental to DCS reputation. Pg. 28

- #3 -  Disclosing or misusing confidential or proprietary information about DCS and its
customers. Pg. 28

- #6 -Directing business to a relative, friend or company in which the employee or employee's
family members has a direct or indirect financial or personal interest. Pg. 29

- #10 - Using DCS' confidential information or trade secrets, facilities, supplies or merchandise for personal gain. Pg.29

**DCS Rule of Conduct:**
- #7 -At no time should employees display conduct detrimental to the reputation of DCS. This includes content in emails, phone calls, and general discussion. Pg. 28.

On December 21, 2020, Ms. Yabrough was interviewed and quoted regarding the above-mentioned Instagram post by the Philadelphia Inquirer. Ms. Yarbrough did not seek or obtain DCS' permission to speak to the media, in violation of **DCS Professional Code of Conduct #7**:

- Representing DCS in the media without proper authorization. Pg.29

On December 30, 2020, Ms. Yabrough, DCS' Executive Director, the HR Director, and Ms. Yabrough's supervisor met via Zoom to discuss the above-mentioned actions and violations. The purpose of the meeting was for the Executive Director to inform Ms. Yarbrough that her actions on social media and in news media were detrimental to DCS and its reputation and potentially a conflict of interest. While the Executive Director was attempting to explain what he saw and the purpose of the meeting, Ms. Yabrough became combative, argumentative, and constantly interrupted the Executive Director to the point where he couldn't finish a sentence. The Executive Director requested several times for Ms. Yabrough to allow him to finish speaking. Ms. Yabrough continued to be insubordinate by continuing to interrupt and over talk the Executive Director to the point that he could not finish a thought or a sentence. At this point, the Executive Director ended the meeting and directed the HR Director to terminate Ms. Yabrough for insubordination and for Group I violation #8, Group II violation #2, and Rule of Conduct violation #8:

- **Group I Violation #8:** Being rude or discourteous to clients, parents, visitors, or employee. Pg. 31.

- **Group II Violation #2:** Intentionally being inconsiderate, rude, or discourteous to customers, visitors, or employees.Pg.32

- **Rule of Conduct violation #8:** Employees should not be disrespectful to the clients they support, their family, their supervisor, team members, and fellow DCS employees. Pg. 28.

With Ms. Yabrough using social media to spread misinformation about DCS and our funders, while being publicly critical of DCS and our local government funders, her behavior has been detrimental to our nonprofit's partnerships with the City of Philadelphia and other governing bodies that fund our programs.  In linking DCS' title and services to her personal business page, Ms. Yabrough has positioned herself to profit her personal business using Diversified's proprietary services.  Ms. Yabrough also has pictures of DCS clients from a DCS class, which potentially presents legal liability for our organization without consent from the DCS clients in the class.

Diversified Community Services employees are expected to adhere to the highest standards of personal and professional business ethics, and to use commonsense and good judgement about the way they present themselves when on duty or when representing Diversified Community Services. At no time should employees display conduct detrimental to the reputation of Diversified Community Services while working Diversified Community Services business.

**Has this employee been previously counseled on this or a similar issue?** ☐ Yes   ☐ No
If yes, How?   X Verbal   ☐ Written   ☐ Final Written Warning   ☐ Probation

- #10 - Using DCS' confidential information or trade secrets, facilities, supplies or merchandise for personal gain. Pg.29

**DCS Rule of Conduct:**
- #7 -At no time should employees display conduct detrimental to the reputation of DCS. This includes content in emails, phone calls, and general discussion. Pg. 28.

On December 21, 2020, Ms. Yabrough was interviewed and quoted regarding the above-mentioned Instagram post by the Philadelphia Inquirer. Ms. Yarbrough did not seek or obtain DCS' permission to speak to the media, in violation of **DCS Professional Code of Conduct #7**:

- Representing DCS in the media without proper authorization. Pg.29

On December 30, 2020, Ms. Yabrough, DCS' Executive Director, the HR Director, and Ms. Yabrough's supervisor met via Zoom to discuss the above-mentioned actions and violations. The purpose of the meeting was for the Executive Director to inform Ms. Yarbrough that her actions on social media and in news media were detrimental to DCS and its reputation and potentially a conflict of interest. While the Executive Director was attempting to explain what he saw and the purpose of the meeting, Ms. Yabrough became combative, argumentative, and constantly interrupted the Executive Director to the point where he couldn't finish a sentence. The Executive Director requested several times for Ms. Yabrough to allow him to finish speaking. Ms. Yabrough continued to be insubordinate by continuing to interrupt and over talk the Executive Director to the point that he could not finish a thought or a sentence. At this point, the Executive Director ended the meeting and directed the HR Director to terminate Ms. Yabrough for insubordination and for Group I violation #8, Group II violation #2, and Rule of Conduct violation #8:

- **Group I Violation #8**: Being rude or discourteous to clients, parents, visitors, or employee. Pg. 31.

- **Group II Violation #2**: Intentionally being inconsiderate, rude, or discourteous to customers, visitors, or employees.Pg.32

- **Rule of Conduct violation #8**: Employees should not be disrespectful to the clients they support, their family, their supervisor, team members, and fellow DCS employees. Pg. 28.

With Ms. Yabrough using social media to spread misinformation about DCS and our funders, while being publicly critical of DCS and our local government funders, her behavior has been detrimental to our nonprofit's partnerships with the City of Philadelphia and other governing bodies that fund our programs.  In linking DCS' title and services to her personal business page, Ms. Yabrough has positioned herself to profit her personal business using Diversified's proprietary services.  Ms. Yabrough also has pictures of DCS clients from a DCS class, which potentially presents legal liability for our organization without consent from the DCS clients in the class.

Diversified Community Services employees are expected to adhere to the highest standards of personal and professional business ethics, and to use commonsense and good judgement about the way they present themselves when on duty or when representing Diversified Community Services. At no time should employees display conduct detrimental to the reputation of Diversified Community Services while working Diversified Community Services business.

**Has this employee been previously counseled on this or a similar issue?** ☐ Yes   ☐ No
**If yes, How?**    X Verbal    ☐ Written    ☐ Final Written Warning    ☐ Probation

When and by whom? __02/20/2020, by her supervisor__

---

**Statement of company policy on this subject:**

**PROFFESIONAL CODE OF CONDUCT**
**#1 – Engaging in business conduct that is detrimental to reputation. Pg. 28**

**#3 -  Disclosing or misusing confidential or proprietary information about Diversified
Community Services and its customers. Pg. 28**

**#6 -  Directing business to a relative, friend or company in which the employee or employee's
family members has a direct or indirect financial or personal interest. Pg. 29**

**#7 -  Representing or discussing Diversified Community Services with the media without
proper authorization. Pg.29**

**#10 -Using Diversified Community Services' confidential information or trade secrets,
facilities, supplies or merchandise for personal gain. Pg.29**

**RULE OF CONDUCT**
**#7 -  At no time should employees display conduct detrimental to the reputation of Diversified
Community Services while working Diversified Community Services business. This
includes content in emails, phone calls, and general discussion. Pg. 28**

**#8 -  Employees should not be disrespectful to the clients they support, their family, their
Supervisor, team members, and fellow Diversified Community Services employees. Pg.
28**

**GROUP I WORK RULE VIOLATIONS**
**#8 -  Being rude or discourteous to clients, parents, visitors, or employee. Pg. 31**

**GROUP II WORK RULE VIOLATIONS**
**#2 – Intentionally being inconsiderate, rude, or discourteous to customers, visitors, or
employees. Pg. 32**

**PRIVILEDGE COMMUNICATION POLICY – Pg. 39**

**COPYRIGHTED INFORMATION POLICY - Pg. 40**

**SOCIAL NETWORKING POLICY – Pg. 40**

**RESPECT CONFIDENTIALY POLICY – Pg. 40**

**RESPECT COPYRIGHT POLICY – Pg. 40**

**Summation of counseling session:**

Ms. Yabrough was in violation of Diversified Community Services polices.  "If an employee engages
in behavior which Diversified Community Services considers detrimental to the interests of the

*exhibit K5*

organization, or threatens the well-being of other employees or patrons, Diversified Community Services may terminate the employee immediately."

**Consequences of failure to improve performance or corrective behavior:**

**Action plan:**
**Termination**

**Employee comments:**

Date of follow-up meeting (if any):_____

**The employee's signature indicates that the supervisor discussed the above matter with the associate and does not necessarily indicate the employee's agreement.**

Employee Signature:_____     Date: _01/01/2021_

Supervisor Signature:_____

Witness Signature: *Patricia McCley*

Executive Director:_____

> **NOTE: CONTINUANCE OF IMPROPER CONDUCT MAY RESULT IN FURTHER DISCIPLINARY ACTION OR TERMINATION.**

*Distribution: One copy to Employee, one copy to Supervisor and original copy to Human Resources.*

exhibit L 1



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## PRE-CHARGE INQUIRY

| For Official Use Only – Inquiry Number: |
|---|
| |

Thank you for contacting the U.S. Equal Employment Opportunity Commission ("EEOC").  The information you give us on this Pre-Charge Inquiry (Form 290A) will help us assist you and determine if your concerns are covered by the employment discrimination laws we enforce.  Answer **all** questions completely and briefly.  Please write clearly.

After completing this Pre-Charge Inquiry, **return it immediately** to the EEOC office identified in the cover letter to this Pre-Charge Inquiry, or to the receptionist if you are completing this Pre-Charge Inquiry in an EEOC office.

**Please note:  This Pre-Charge Inquiry is not a Charge of Discrimination.**

The Pre-Charge Inquiry is **not intended** for use by applicants for federal jobs or employees of the US government. See http://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm for discrimination complaints in federal jobs.

| | |
|---|---|
| **Personal Information** | First Name: _Nikkyeea_  MI: __  Last Name: _Yabrough_ <br> Home Phone: (_267_) _257 7362_ Cell: (_267_) _257 7362_ Email: _nyabrou2@gmail.com_ <br> Address: _2522 S. 62nd street_  Apt.: _2F_ <br> City: _Philadelphia_  County: _Phila_ State: _PA_ Zip Code: _19142_ <br> What is the best way to reach you? _267-257-7362  or nyabrou2@gmail.com or MAIL_ <br> What are the best days and times to reach you? _Anytime_ <br> Do you need language assistance? Yes ☐  No ☑ <br> If so, what do you need? _____ <br> Date of Birth: _11 / 03 / 1974_  Sex:  Male ☐  Female ☑ <br> General information about you that will allow us to serve all individuals better: <br> i. Are you Hispanic or Latino? Yes ☐  No ☑ <br> ii. What is your race? Choose all that apply:  American Indian or Alaskan Native ☐  Asian ☐ <br> Black or African American ☑  Native Hawaiian or Other Pacific Islander ☐  White ☐ <br> iii. What is your National Origin or ancestry? _Black African American_ |
| **Who do you think discriminated against you?** | Employer ☑  Union ☐  Employment Agency ☐  Other Organization ☐ <br> Organization Name: _Diversified Community Services_ <br> Address: _1529 S. 22nd street_  Suite: _____ <br> City: _Philadelphia_  County: _Phila_ State: _PA_ Zip Code: _19146_ <br> Name of Human Resources Director or Owner: _Patricia McClay + Otis Bullock Jr._ <br> Email: _Pmcclay@dcsphila.org_  Phone: (_215_) _336 5505_ <br> _Obullock@dcsphila.org_ |

CMPLC-Yabrough Vs Bullock Etal

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**



21050230800005

| | |
|---|---|
| **Who do you think discriminated against you?**<br><br>**(continued)** | How many employees (estimated) does the organization have at all locations?  Check one:<br><br>Less than 15 ☐     15 100 ☑     101-200 ☐     201-500 ☐     More than 500 ☐<br><br>Where you work(ed), or applied to work, if different from the organization address above:<br><br>Address: _1920 S. 24th Street_____ Suite: _____<br>City: _Philadelphia_____ County: _Phila_____ State: _PA_ Zip Code: _19145_ |
| **Why do you think you were discriminated against?** | I think I was discriminated against because of:<br><br>☐  Race – Your race: _____<br><br>☐  Color – Your color: _____<br><br>☐  Religion – Your religion: _____<br><br>☐  Sex (including pregnancy, gender identity, or sexual orientation)<br><br>☐  National origin – Your national origin: _____<br><br>☐  Age (40 or older) – Your age at the time of the adverse employment action: _____<br><br>☐  Disability – Check all that apply:<br>　　☐  I have a disability<br>　　☐  I had a disability in the past<br>　　☐  I don't have a disability but I am treated as if I have a disability<br>　　☐  I am closely related to or associated with a person with a disability<br><br>The disability involved: _____<br><br>Is your employer aware of the disability?  Yes ☐     No ☐<br><br>If yes, how? _____<br><br>☐  Genetic information, my family medical history, or my participation in genetic services like counseling, education or testing<br><br>☑  Retaliation – Check all that apply:<br>　　☐  I filed a charge of job discrimination about any of the above<br>　　☐  I contacted a government agency to complain about job discrimination<br>　　☑  I complained to my employer about job discrimination<br>　　☐  *I helped or was a witness in someone else's complaint about job discrimination*<br>　　☐  I requested an accommodation for my disability or religion<br><br>☐  None of the above – The reason for this inquiry: _____ |
| **What happened to you that you think was discriminatory and when did it happen?** | EXAMPLES:  I was denied an accommodation I needed to perform my job; I was fired because I was pregnant; I was laid off because of my age.  State the date the action happened.<br><br>Date: _2/24/2020_  Action: _Terminated but bought back because reason was identified by Executive Director as retaliatory and wrong doing on then Supervisor part._<br><br>Date: _12/30/2020_  Action: _Terminated for a social media post without warning, write up or counsel._<br><br>Name of Person(s) Responsible: _Tennille Hannah, Patricia McClay, Otis Bullock Jr._<br>_(Reponsible party)      (negligence contributor) (negligence)_ |

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

| What reason(s) were you given for this job action? | Reason(s): _____ <br> _____ <br> Who told you this? _____ His or Her Job Title: _____ |
|---|---|

| What is your job, previous job, or the job you applied for? | Date Hired: 1/4/2019 Job Title at Hire: Housing Intake Specialist <br> Annual Pay Rate When Hired: 16.78 HR. Last or Current Annual Pay Rate: 16.78 HR. <br> Job Title at Time of Alleged Discrimination: Housing Intake Specialist <br> Date Your Employment Ended: 12/30/2020 Select One: Quit ☐ Discharged/Laid off ☑ <br> Name and Title of your Immediate Supervisor: Tennille Hannah <br> Job Applicants - What was the title of the job you applied for: _____ <br> Date you applied: __/__/__ Date you found out you were not hired: __/__/__ |
|---|---|

**Was another person in the same or similar situation treated the same, better, or worse than you?**
**EXAMPLES: Who else applied for the same job? Who else had the same attendance record? Who else had the same performance appraisal?**

| Who was treated BETTER than you? | 1. Name: Verdell Pekerson Job Title: Energy Counselor <br> Email: VPekerson@desphila.org Check how they are different from you: <br> Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☑ Disability ☐ <br> How were they treated better? Constant Mistakes and work violations repeatedly overlooked and unaddressed Date: __/__/__ <br> 2. Name: Delores Harper Job Title: Energy Counselor/... <br> Email: _____ Check how they are different from you: <br> Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☑ Disability ☐ <br> How were they treated better? Sharing of client information work conduct towards other employees and mistreatment of clients constantly passified and overlooked by Tennille Hannah Date: __/__/__ |
|---|---|

| Who was treated WORSE than you? | Name: _____ Job Title: _____ <br> Email: _____ Check how they are different from you: <br> Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Disability ☐ <br> How were they treated worse? _____ <br> Date: __/__/__ |
|---|---|

| Who was treated the SAME as you? <br><br> Stephanie Lauser as well. I identified a trouble maker | Name: Martin Lewis Job Title: _____ <br> Email: _____ Check how they are different from you: <br> Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Disability ☐ <br> How were they treated the same? Scrutinized often by Tennille Hannah and Patricia McClay for needing help (from myself) to assist clients. Company hires Melvin Goshorn Date: __/__/__ why he needed help to set up when a phone meeting. Insinuated he was incapable. Unsure of date. I no longer have access to my work Emails. |
|---|---|

By the two mentioned above and Tennille Hannah.

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

| **Are there any witnesses to any of the job actions taken against you? If yes, please provide their contact information and tell us what they will say.** | 1. Name: _Martin Lewis_  Job Title: _Housing Counselor_ <br> Email: _____  Phone: (_302_) _373-1288_ <br> What will they tell us? _Conduct of Tennille Hannah and_ _302-378-6134_ <br> _Patricia McClay_ <br> 2. Name: _Stephanie Lawson_  Job Title: _Admin. Asst._ <br> Email: _____  Phone: _267 385-1321_ <br> What will they tell us? _Conduct of Tennille Hannah_  _267-930-7488_ <br> _and Patricia McClay_ <br> _See Attached Letter For More name_ |
|---|---|
| **Have you already filed a charge on this matter with the EEOC?** | Yes ☐   No ☒ <br> If yes:  Date you filed: ___/___/_____  Charge Number: _____ |
| **Have you filed a complaint on this matter with another agency?** | Yes ☐   No ☒ <br> If yes:  Agency name: _____ <br> Date you filed: ___/___/_____  Complaint Number: _____ |
| **Do you have someone representing you in this matter?** | Yes ☐   No ☒ <br> If yes:  Attorney ☐   Union ☐   Other ☐ <br> Name: _____  Date of Contact: ___/___/___ <br> Email: _____  Phone: _____ |
| **Who can we contact if we are unable to reach you?** | Name: _Nishya A. Yabrough_  Relationship: _Daughter_ <br> Address: _2522 S 62nd St. 2F_  City: _Phila_  State: _Pa_  Zip Code: _19142_ <br> Email: _Shya2163@gmail.com_  Home Phone: (__) ____  Cell: (215) _267-250-8442_ |
| **Privacy Act Statement** | This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are: 1) EEOC PRE-CHARGE INQUIRY, FORM 290A, ISSUED OCTOBER 2017. 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. §12117(a). 3) PRINCIPAL PURPOSE. The purpose of this form is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge counseling, if appropriate. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's assessment of your situation. It is not mandatory that this form be used to provide the requested information. EEOC Pre-Charge Inquiry, Form 290A, issued October 2017. |

Please note: You must file a charge of job discrimination within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located where a state or local government agency enforces job discrimination laws on the same basis as the EEOC's laws. **This Pre-Charge Inquiry is not a charge.** If you would like to file a charge of discrimination immediately, contact the EEOC office on the cover letter.  We recommend that you keep a copy of your completed Pre-Charge Inquiry and the Cover Letter for your records.

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

*LS*



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### CHARGE OF DISCRIMINATION

| | For Official Use Only – Charge Number: |
|---|---|

EEOC Form 5A (October 2017)

| | |
|---|---|
| **Personal Information** | First Name: *Nikkyeea Yabrough* MI: _____ Last Name: *Yabrough*<br>Address: *2522 S 62nd Street* Apt.: *2F*<br>City: *Philadelphia* County: *Philadelphia* State: *PA* Zip Code: *19142*<br>Phone: *267-257-7362* Home ☐ Work ☐ Cell ☑ Email: *nyabrou2@gmail.com* |
| **Who do you think discriminated against you?** | Employer ☑   Union ☐   Employment Agency ☐   Other Organization ☐<br>Organization Name: *Diversified Community Services*<br>Address: *1529 S. 22nd Street* Suite: _____<br>City: *Philadelphia* State: *PA* Zip Code: *19146* Phone: *215-336-5505* |
| **Why you think you were discriminated against?** | Race ☐   Color ☐   Religion ☐   Sex ☐   National Origin ☐   Age ☐<br>Disability ☐   Genetic Information ☐   Retaliation ☑   Other ☑ (*specify*) |
| **What happened to you that you think was discriminatory?** | Date of <u>most recent job action</u> you think was discriminatory: *12/30/2020*<br>Also describe briefly <u>each job action</u> you think was discriminatory and when it happened (estimate).<br><br>*Please See Attached Document.* |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>*I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.*<br><br>**I declare under penalty of perjury that the above is true and correct.**<br>Signature: *Nikki Yabrough* Date: *2/12/2021* |

L 6

To whom this may concern,

My employment with Diversified Community Services was terminated December 30th, 2020. I was employed with the organization for one year, and was let go because of my social media post which discussed a newspaper article that stated, "Pennsylvania failed to utilize one hundred million in Care Act funds allocated for people needing rental and mortgage assistance." The post was my opinion, and had no direct affect or link to the workplace. Yet I was accused of bringing negative publicity to the organization. Looking back, realizing that working in an AT-Will state such as PA, an employer can terminate one's employment at will without warning and merit.

The reason for this complaint against this organization is because I feel the social media post was not the overall reason for being let go. I had a very troubling year within Diversified Community Services, and wanted to bring awareness about the company's work culture and behaviors towards me as an employee. Otis Bullock Jr. (executive director) and Patricia McClay (now chief of staff) were part contributors, and negligent of certain individuals' work behaviors.

In the accompanied documentation, I noted this is the second time the employer terminated my employment. The first instance, Otis felt Nicole Spruill (supervisor at the time) was being vindictive, retaliating against me for speaking out against behavioral and client work observations that I made after being employed there two months. I reached out to the Director, requesting a meeting between him and myself. I provided the email with this letter. After our meeting, I was instructed to return to work. For clarification I also met with Carmen Caraballo, a director over the Dixon House at that time and responsible for hiring me at this location. I stressed major concerns to her as well regarding employee behaviors.

Leading up to my termination, I had multiple sit-downs with Patricia. Tennille became the supervisor overseeing The Dixon House during Covid-19. I addressed Patricia feeling isolated, that I could not trust Tennille had good intentions for me. Tennille frequently threw Patricia and Otis name around to provoke privilege and power, insinuating she had personal relationships with hire ups. Every attempt I made to contribute to the team was rejected by Tennille with a solid "NO." Multiple times Tennille was instructed by Patricia to train and assist with my growth and development within the company. Each time Ms. Hannah made personal excuses daily why she did not have time to do so. The overall reason Tenniles behavior went unaddressed was because Patricia did not show up to the Dixon House nor follow up after giving instruction. Yet, when there was a complaint from Tennille regarding employees' work responsibilities being met or not, Patricia entered the building very blunt and bulldoggish. Let me note, Tennille Hannah became the Dixon House's only point of contact between hire ups and our building site.

I never minded receiving constructive feedback from Patricia but most times her communication made me very uncomfortable. I even spoke up to her stating how often our conversations felt like personal attacks against me. This is the overall reason why I believe this organization decided to terminate my employment. I started questioning their treatment against me. It always appeared to me that Otis Bullock trusts Mrs. McClay to handle employee affairs. Which is why I believe Mr. Bullock should be held accountable for negligence, simply because he doesn't allow people to speak up for themselves and Mainly because he is not present to witness employee conduct. I know this because this is what happened to me twice. One minute into a zoom meeting on December 30th, I was not allowed to speak

27

and when I did, the meeting ended briefly with "You're fired" and I was escorted out.

In closing, some of my employment history includes over twenty years in management and leadership roles. I have worked two jobs in the past, one for twelve years another for thirteen. Both I left on good terms. I went to school acquiring a Bachelors in Adult Organizational Development from Temple University. My degree focuses on systematic processes and individual behaviors in team processes, conflict resolution, employee conduct and negotiation. I would not be filing this complaint with the EEOC unless it was warranted. Diversified Community Services may have had legal grounds for terminating my employment because of a social media post, I understand this now. I want to shed light on an outstanding problem existing behind the scenes in this organization where emphasis is placed on degrading employees over the community it is supposed to serve. Altogether, I do not find this company treating employees with respect nor holding up to their mission. No one else should be subjected to their behaviors and I am submitting this complaint so that the company can be documented on misconduct, mistreatment, and leadership negligence.

I am including names of individuals who may be willing to speak up, specifically regarding Tennille Hannahs' name throwing, dishonesty and conduct, and Patricia McClay demeanor towards employees located at The Dixon House Location. The names and contact number are:

Martin Lewis 302-373-1288, 302-378-6139

Ms. Theresa 267-333-2914

Stephanie Lawson 267-385-1321, 267-930-7468

Sam cell unknown but site phone number is 215-336-3511


Thank You

Nikkyeea Yabrough

L8

Monday February 24, 2020

To: Patricia McClay and Otis Bullock
RE: Nikkyeea Yabrough Termination

      Pat and Otis first let me thank you for the opportunity to work within your organization
Diversified Community Services, The Dixon House.  After talking with Pat over my termination
this evening, I felt compelled to express how disappointed I am with myself first, but also with
the organizations decision to let me go.  I was just being praised for doing a good job, now we're
here.  I assumed it to be a minor mishap, but Pat explained in her words it appeared as though "I
was sticking my chest out".  Let me go further into detail on the reason why I feel I was
terminated.

First, I'll start by saying Pat and Carmen knew I was a realtor when they hired me.  I was told I
could not do any real estate business during my time at work, while on the clock.  I understood
the conflict of interest.

Referring to the text messages Nicole received from me on February 20th, 2020 please understand
the purpose of me saying, **"I was thinking about not coming back and taking a hit with the
time."**  Meant, I didn't think it was appropriate for me to come back to work on the day at
question, simply because the meeting I attended went over the hour time that was stipulated.
Before the text messages, I called in and spoke with Ms. Theresa who said, **"if anyone asked for
you, I would make them aware you got held over."**  I acknowledged I was late, and now
understand how Nicole may have felt by me not speaking with her directly.

Furthermore, I thought by coming back it would appear that I could be stealing time.  For
instance, we are instructed to clock in (morning punch) and out (last punch for the day) with the
newly installed timeclock.  Lunch punches are not captured by the system.  For transparency, and
all fairness me saying I wasn't returning to work wasn't out of arrogance, I honestly felt it would
be wrong to get paid for a full day of work.  For accountability purposes I can see how my text
message was misinterpreted, yet no one else in the housing department is being addressed about
their comings and goings.  I really didn't think it was a big deal especially because the next day
Nicole didn't come to me about it.  We went on with our work routines.

I honestly feel other instances leading up to that day as being the real reason for my termination.
I shared my concerns and communicated what I saw to Carmen about a week and a half into my
employment.  Carmen and I sat and discussed the verbal outbreaks and blatant disrespect
amongst Tennille and Nicole, those two towards each other, and their attitudes towards the
organization as a whole.  I openly communicated with Tennille and Nicole how I felt about their
unprofessionalism, lack of guidance, lack of training, and ignorance towards the community of
people we are supposed to serve.  This caused a wedge between us three and added tension to
our workspace.  So, I feel the day I didn't return to work was the result of me speaking up
against them both regarding their behaviors, not for taking a half day of work.

Pat and Otis I would like the courtesy of sitting with you both.  To me this was simply something
that spiraled over my time.  February 20th, was a misunderstanding.  I'm days shy of the 120-day

L9

probation period.  Within that time, I built a great working relationship with Mr. Martin, he has taught me a great deal about the programs offered to consumers regarding help with delinquent mortgages.  I was approved for two scholarships that would allow me to become a fully certified housing counselor, and I told Pat today, I really felt I could have contributed in turning Dixons' House housing department around.  I've built trusting relationships with clients, because I cared about the environment of people we served.

Lastly, I thought about bringing to your attention the mishandling of clients and their case files, truly that is the bigger issue.  I never thought this incident would outshine the negligence I openly pointed out to Nicole regarding client's case files and underrepresentation.  To my understanding the Dixon House has lost some great people under the leadership of Tennille via Nicole.  I would like to elaborate more if allowed, if not thanks again for the opportunity.

Nikkyeea Yabrough

L 10

I've included some email threads and timelines to show how communication was carried out throughout the organization. Beginning July 2019 email correspondence between myself and hire ups were mostly ignored ignored.

Dixon House Time Line

9/10/2020 RE:
Email sent to
Tenille Default +
Lateness credits

9/1/2020   MARTIN + Tenille Laid off

9/14/2020   Tenille returns Asking that I assist with file
Compliance and closing cases in K's

(no response) 9/8/2020   Ms Pat + Kim informed me of some structural
changes And Lost Funding Source.

9/14/2020 Email sent to
Pat RE: Caseload
Closures
(no response)

11/4/2019 Date of HIRE

11/10/2019 EMAILED Director CARMEN Carabello about office
observations

← ? MET w/Carmen in RE Office observations   Unsure about date

2/24/2020   Email Sent to Pat in RE to my firing (write-up one
week prior)

2/24/2020   letter (Email Sent to P Mackay + Otis Bullock)

2/24/2020   Terminated.

3/3/2020 11am Meeting with Otis B. RE: Termination
3/4/2020 Rehired + Returned to work.

3/7/2020 Email Sent to Pat + Otis (No Response)
Regarding PARs + Training

Find Email
sent

July 7th 2020 Email Sent for days off (No Response)

July 29th Email Sent to Pat M. + Otis Regarding
No Response

Spoke Each
time I met
w/Anton Marie
Discussing both
Problems with
Dixon

8/10/2020 Meeting w Ms Pat (Housing) Dixon House Updates

8/12/2020 Housing + Energy Meeting, Days off Discussed in
regards to my request. "What do you have to do that
you didn't do in the time we were home"
"I don't believe in paying people to stay
home"

7/9/2020 Phone Meeting w/Ms. Pat Asking Why + How I am
helping Ms. Hampton. Unsure what she was looking
for.

L12

**James and Zoom meeting**

Nikkyeea Yabrough <NYabrough@dcsphila.org>
Tue 9/15/2020 2:10 PM
**To:** Demetra Hatton <DHatton@dcsphila.org>
**Cc:** James Carunchio <jcarunchio@dcsphila.org>

Hi Ms. Hatton,

Unfortunately, James was unable to host your meeting today.  He stated he's never hosted a meeting
before and we were unable to log in to zoom with your credentials. I also checked two green folders on
your desk and neither of them had specific instructions regarding this meeting.


Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 310
nyabrough@dcsphila.org

1:33p.m   Ms. Hatton asks
James to reach out to me to
help him launch here Zoom
meeting (She's out sick). James is
unaware of the zoom App, doesn't
have his own credentials, we
were unable to do this because
her credentials didn't work
nor did she leave him or I
specific instruction on how to
do this.
This meeting was suppose to
happen at 2p.m today.
9/15/2020.

 **Gmail**

nikkyeea yabrough <nyabrou1@gmail.com>

## office observations

2 messages

---

**nikkyeea yabrough** <nyabrou1@gmail.com>                       Tue, Nov 12, 2019 at 7:44 PM
To: Carmen Caraballo <ccaraballo@dcsphila.org>

Hi Carmen,

I was wondering if you and I can sit down and discuss some concerns I have.  Nothing bad, I spoke with Nicole first earlier today and want to bring my concerns to your attention.

Out of respect to the office and our duty to serve the community I would ask that you keep this meeting between just you and I, until we meet.  I'm new eyes and a neutral party and don't want to ruffle anyones feathers.  I just feel in order for the Dixon's House housing department to move forward individuals behaviors and job roles needs some attention.

Thanks
Nikkyeea Yabrough
Century 21 Advantage Gold
2010 Oregon Avenue
Philadelphia, Pennsylvania 19145
Direct: 267-257-7362
Office: 215-465-1400 ext 2551

### CENTURY 21 Ranks Highest in Customer Satisfaction across All Home Buyer/Seller Segments for a Third Consecutive Year!

---

**Carmen Caraballo** <ccaraballo@dcsphila.org>                 Wed, Nov 13, 2019 at 11:38 AM
To: nikkyeea yabrough <nyabrou1@gmail.com>

Hi Nikkyeea,

Good Morning. Can you please call me? I'm in between meetings and have a few minutes to talk.

Get Outlook for Android

---

**From:** nikkyeea yabrough <nyabrou1@gmail.com>
**Sent:** Tuesday, November 12, 2019 7:44:51 PM
**To:** Carmen Caraballo <ccaraballo@dcsphila.org>
**Subject:** office observations

[Quoted text hidden]

 Gmail

nikkyeea yabrough <nyabrou1@gmail.com>

---

**The draft I didn't send.**

1 message

---

**nikkyeea yabrough** <nyabrou1@gmail.com>                          Mon, Feb 24, 2020 at 7:35 PM
To: Patricia McClay <PMcClay@dcsphila.org>

Hi Pat,

Here's the actual draft I wanted to send last week. Go figure.  I'm
composing the email to send to you and Otis this evening. I just need
to gather my thoughts. It will follow this email.

Thanks

"I'm having difficulty fitting in here at The Dixon House. It's too
the point I'm questioning my ability to stay on.  Don't get me wrong I
love what I'm doing, what I learned so far and the clients I come
across on a daily basis. People are coming in, workshops going,
overall seems like we're pushing forward.

When I sat down with you and Carmen we discussed me being a realtor.
Against my better judgement I don't believe a realtor has a place
here.  I totally disagree but imagine working with people who doesn't
value the knowledge one brings to the table. It feels like I'm
constantly being told "sit down, do the job, shut up!" All because I
don't have a housing counselor certification. On top of that I have no
clear understanding of what I'm allowed to say or do. I love doing
intake. People have questions and concerns, I try my best to direct
them to the counselors but I'm not totally unaware of laws and ethics.

Martin and I have a great working relationship and he's been the one
teaching me a lot of the jargon and processes facilitated by housing
counselors.  I know there's more to learn and I'm willing to do so.
Yet On the other hand, When it comes to Tennille and Nicole, I don't
mind admitting, one I stepped into their mess prematurely. Second I
spoke openly to them both about their conduct, communication, and the
handling of each other. Lastly, I assumed incorrectly that by doing so
I would be respected just for speaking open and honest.  I mean hey,
how else was I suppose to handle the drama I was drugged into.

Pat, I get it that I'm new and I'm not aware of my mistakes until I
make them, if that helps you to understand my plight.

I'm constantly being told of things I can't say or do.  Have I made
mistakes, Yes. said that"

Sent from my iPhone

L15

 Gmail

nikkyeea yabrough <nyabrou1@gmail.com>

---

**Personnel Meeting**
2 messages

---

**Charlene Ryant** <cryant@dcsphila.org>                                    Wed, Feb 26, 2020 at 12:59 PM
To: "nyabrou1@gmail.com" <nyabrou1@gmail.com>
Cc: Otis Bullock <OBullock@dcsphila.org>, Patricia McClay <PMcClay@dcsphila.org>

Good afternoon Ms. Yarborough your meeting with Otis Bullock has been scheduled for Tuesday March 3rd, 2020 here in our office at the Mamie Nichols Center for 11:00 a.m.

Thank you,

Charlene

---

**Nikki Yarbrough** <nyabrou1@gmail.com>                                    Thu, Feb 27, 2020 at 6:05 AM
To: Charlene Ryant <cryant@dcsphila.org>

Thanks Charlene

Sent from my iPhone
[Quoted text hidden]

L16

 Gmail

**nikkyeea yabrough <nyabrou1@gmail.com>**

## Billing this week
1 message

**nikkyeea yabrough** <nyabrou1@gmail.com>                                    Sat, Mar 7, 2020 at 2:03 PM
To: Patricia McClay <pmcclay@dcsphila.org>, OBullock@dcsphila.org

Hi Otis and Patricia,

Again I'm so grateful for you both in allowing me to return to Diversified Community Services.  My week back was okay.

A concern we need to touch on is Billing.  I cannot overly express enough that training is needed for us here at The Dixon House.  We're still down to the last hour with the PARS, a lot of back and forth with minimum understanding on how we should actually be reporting our hours.

Would it be beneficial for everyone to fully have knowledge of how the PARS hours are properly reported?  I would like to offer a solution, if you both are interested.

Thanks Again.
Nikkyeea Yabrough
Century 21 Advantage Gold
2010 Oregon Avenue
Philadelphia, Pennsylvania 19145
Direct: 267-257-7362
Office: 215-465-1400 ext 2551

## CENTURY 21 Ranks Highest in Customer Satisfaction across All Home Buyer/Seller Segments for a Third Consecutive Year!

No response

L 17

 Gmail

nikkyeea yabrough <nyabrou1@gmail.com>

## Fw: Request Off
1 message

**Nikkyeea Yabrough** <NYabrough@dcsphila.org>                    Fri, Aug 7, 2020 at 10:28 AM
To: Nikki Yarbrough <nyabrou1@gmail.com>

see attached

Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 310
nyabrough@dcsphila.org

**From:** Nikkyeea Yabrough
**Sent:** Thursday, July 30, 2020 12:36 PM
**To:** Tennille Hannah <thannah@dcsphila.org>; Martin Lewis <mlewis@dcsphila.org>
**Cc:** Patricia McClay <PMcClay@dcsphila.org>
**Subject:** Request Off

Hi All,

Requesting off august 21st & 24th

Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 310
nyabrough@dcsphila.org

*No response to direct Email But during a staff meeting Patricia McClay responded to me regarding my request stating " I don't know what it is you need days off for when you were home 3 months for Covid"*

*we worked from home march 17 — July m-f.* ←

L18

 Gmail

nikkyeea yabrough <nyabrou1@gmail.com>

## Intake Direction and Client files
1 message

**Nikkyeea Yabrough** <NYabrough@dcsphila.org>　　　　　　　Wed, Jul 29, 2020 at 11:14 AM
To: Patricia McClay <PMcClay@dcsphila.org>, Otis Bullock <OBullock@dcsphila.org>

Good Morning,

The August 1st deadline for housing counselors certifications is approaching.  I'm not totally sure what the process would be for housing intake here at The Dixon House.

Right now I have two clients looking for mortgage default assistance.  I did an intake for one yesterday and another informed me he has an ACT 91 in his possession.  I need to know how you would like me to move forward with intake.

I can still process intake and prepare files for our housing counselors but I need to know who the files will be going to in case our counselors here are unable to counsel or proceed forward with clients cases after July 31st.

**For Martin,**  I have names and locations and status updates for his current clients.  To my knowledge none of them will be in court after the halt to foreclosures is lifted.

**For Tennille,**  I'm willing to work with her to get updates on the the case files she is managing.  She has both FTHB approaching settlements, and clients who may have been in court pre COVID-19.

Direction or suggestions on how I should be handling client files going forward would be appreciated.  Looking forward to hearing from you.

Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215 336 3511 x 310
nyabrough@dcsphila.org

No Response
During staff meeting Patricia
McClay said to me
" Stop sending emails, Otis now I
will respond to them "

Mail - Nikkyeea Yabrough - Outlook

## Re: Dixon House Facebook

**Nikkyeea Yabrough** <NYabrough@dcsphila.org>
Mon 2/3/2020 12:33 PM
**To:** Nicole Spruill <nspruill@dcsphila.org>

Hey,

I looked on the home page. I just wanted to see where the young lady that called was getting her information. She stated she saw something last night that we were having classes today. I just checked to make sure, and gave my input on what was there.

As far as the credit topic. I'm not personally discussing with people their credit scores. As the intake person that information is available to me when I pull their credit reports during the intake process. Some share openly and ask questions about what kind of credit assistance the Dixon House may provide.

I overly understand my responsibility as the Intake Specialist. I'm here to help. Just suggesting some ideas.

Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 310
nyabrough@dcsphila.org

---

**From:** Nicole Spruill <nspruill@dcsphila.org>
**Sent:** Monday, February 3, 2020 12:07 PM
**To:** Nikkyeea Yabrough <NYabrough@dcsphila.org>
**Subject:** RE: Dixon House Facebook

*Nicole response*

Hi Nikky,

I am not sure where you are looking on our Facebook page. Jim has posted the dates for our FTHB, Anti-Predatory and Fair Housing workshops for February, and he will continue to post them from month to month. In regards to the Anti-Predatory and Fair Housing workshops, we should have enough client's registered due to us cancelling January's workshops due to low attendance. Also these workshops are mandatory to attend. Please call the clients for confirmation in addition to emailing them.

It is the responsibility of the housing counselor only to determine if the client is credit worthy and any credit issues. Per our funders, the housing intake specialist is not allowed to discuss client's case details, interact with realtors or lenders. It is also your responsibility to only collect the documents, complete the NEC, input data in RX office and make the appointments for the counselors.

Going forward please continue to handle only responsibilities assigned to you as the intake specialist. Please let me know if you any further questions or concerns.

L 20

Thank you,
Nicole R. Spruill
Diversified Community Services
Manager of Housing & Financial Counseling
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 318
nspruill@dcsphila.org


**From:** Nikkyeea Yabrough
**Sent:** Monday, February 3, 2020 11:46 AM
**To:** Nicole Spruill <nspruill@dcsphila.org>
**Subject:** Re: Dixon House Facebook

Me to Nicole

Hi,

I looked at our Facebook page. As of right now I don't see anything posted on the page for our February or March classes. I also fear we don't have enough participants signing up for this weeks Fair housing and Anti-predatory lending class. I'll keep at it though.

In the future maybe we can consider adding a credit workshop. After Speaking with most of our attendees that is a true need and desire from most of them. A lot of them have credit questions and concerns. I think that could also be a reason why most of them aren't signing up for the other classes. The main point all of our workshop speakers touched on was credit, and at that point a lot of them realized they didn't have a score worthy of obtaining a mortgage.

Maybe we all can discuss, Just a thought.

Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 310
nyabrough@dcsphila.org


**From:** Nicole Spruill <nspruill@dcsphila.org>
**Sent:** Monday, February 3, 2020 10:30 AM
**To:** Nikkyeea Yabrough <NYabrough@dcsphila.org>
**Subject:** Dixon House Facebook

https://www.facebook.com/DixonHousePhila/


Thank you,
Nicole R. Spruill
Diversified Community Services
Manager of Housing & Financial Counseling
1920 South 20th Street

L 21

Philadelphia, PA 19145
215-336-3511 x 318
nspruill@dcsphila.org

## Re: Anti-Predatory Workshop

**Nikkyeea Yabrough** <NYabrough@dcsphila.org>
Mon 2/10/2020 9:42 AM
**To:** Nicole Spruill <nspruill@dcsphila.org>
**Cc:** Martin Lewis <mlewis@dcsphila.org>

📎 1 attachments (106 KB)
20200210100715728.pdf;

Hi see attached.

Christina and James are the only two from the January's class so far. Calls have been placed, emails sent.

Tennille was saying we all were going to meet and discuss how we should proceed with the remaining workshops when you got back.

Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 310
nyabrough@dcsphila.org

---

**From:** Nicole Spruill <nspruill@dcsphila.org>
**Sent:** Monday, February 10, 2020 8:26 AM
**To:** Nikkyeea Yabrough <NYabrough@dcsphila.org>
**Cc:** Martin Lewis <mlewis@dcsphila.org>
**Subject:** Anti-Predatory Workshop

Good Morning Nikky,

Please confirm the number of attendees for the Anti-Predatory workshop on Wednesday.


Thank you,
Nicole R. Spruill
Diversified Community Services
Manager of Housing & Financial Counseling
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 318 (office)
215-551-4327 (fax)
nspruill@dcsphila.org

L 23

**Re: Fair Housing Workshop**

Nikkyeea Yabrough <NYabrough@dcsphila.org>
Tue 2/11/2020 4:10 PM
To: Nicole Spruill <nspruill@dcsphila.org>

Nicole, The sign in sheet is what I what I was given from Tennille.  I know you have a lot on your plate so I don't mind waiting  for an appropriate time to further discuss.  It won't happen again.

I just wanted you and Martin to see I made another attempt to get our attendance up for tomorrows class.

I Understand now, and I apologize.
Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 310
nyabrough@dcsphila.org

---

**From:** Nicole Spruill <nspruill@dcsphila.org>
**Sent:** Tuesday, February 11, 2020 3:41 PM
**To:** Nikkyeea Yabrough <NYabrough@dcsphila.org>
**Subject:** Re: Fair Housing Workshop

Hi Nikky,

Not sure where the disconnect is but I printed the Anti-Predatory and Fair Housing sign in sheets.

The workshops are not mandatory to qualify for the Philly First Home Program that is incorrect information. It is a requirement from our funder that all workshops are attended.

Second, this is the first time you have copied me on any emails to clients regarding any workshops, because I would have told you how to send the email out. We have to be very careful of the verbiage that is being used when addressing clients.

Third and lastly, you cannot state the the real estate market is unpredictable at any time. This is in our National Industry Standards that I provided you with after starting with us.

Proper email etiquette should be used at all times.

Let me know if you have any questions.

Thank you,
Nicole R. Spruill
Diversified Community Services
Manager of Housing & Financial Counseling

L 24

1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 318 (office)
215-551-4327 (fax)
nspruill@dcsphila.org


**From:** Nikkyeea Yabrough <NYabrough@dcsphila.org>
**Sent:** Tuesday, February 11, 2020 3:16 PM
**To:** Nicole Spruill <nspruill@dcsphila.org>
**Subject:** Re: Fair Housing Workshop

The list provided by Tennille that you also have a copy of stated Fair housing with tomorrows date.


See Attached.

Forgive me, but I stated many times before that I communicate both one on one (verbal and email first) and also send group emails, I was never instructed that way was inappropriate.

I'll keep that in mind moving forward.
Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 310
nyabrough@dcsphila.org


**From:** Nicole Spruill <nspruill@dcsphila.org>
**Sent:** Tuesday, February 11, 2020 3:10 PM
**To:** Nikkyeea Yabrough <NYabrough@dcsphila.org>
**Subject:** Re: Fair Housing Workshop

Hi Nikky,

The workshop scheduled for tomorrow is Anti-Predatory not Fair housing.

Also, you need to use bcc when emailing, the clients should know each other's email addresses.

The delivery of the email is not correct.

We will discuss when I come in tomorrow.



Thank you,

*L 25*

*Emails regarding PARS.*

**Fw: HUD Billing Submission**

Nikkyeea Yabrough <NYabrough@dcsphila.org>
Thu 3/5/2020 4:54 PM
To: Nikki Yarbrough <nyabrou1@gmail.com>


Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215 336 3511 x 310
nyabrough@dcsphila.org


**From:** Nikkyeea Yabrough <NYabrough@dcsphila.org>
**Sent:** Thursday, March 5, 2020 4:36 PM
**To:** Nicole Spruill <nspruill@dcsphila.org>
**Subject:** Re: HUD Billing Submission

hi,

I understand how important it is to have our Pars in on time.  Last meeting we discussed that the mid month report would be shared with Martin and I so that we can view the clients we've seen and correct any eras.

For February that didn't happen until I believe the 23rd/24th.  When we received the report I noticed some of my clients wasn't on the document. I was informed because they needed to be flipped out of prospect lead, technically because they haven't had their 1st counseling with a counselor.  Tennile said that would be the case going forward, but she and I did discuss the names of those missing.

It's 4:30 and I am still waiting for Tennille to provide to me the report with corrections as she promised earlier today, after those clients are flipped so I can make sure my Par adds up correctly in intake hours.



Thank you,
Nikkyeea Yabrough
Diversified Community Services
Housing Intake Specialist
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 310
nyabrough@dcsphila.org

L 26

**From:** Nicole Spruill <nspruill@dcsphila.org>
**Sent:** Thursday, March 5, 2020 4:21 PM
**To:** Tennille Hannah <thannah@dcsphila.org>; Martin Lewis <mlewis@dcsphila.org>; Nikkyeea Yabrough <NYabrough@dcsphila.org>
**Subject:** HUD Billing Submission

Hi Team,

Effective today, PHFA billing corrections need to be submitted to Tennille by 2:00pm on the 1st of each month so that she can submit all reports to me by 2:00pm on the 3rd of each month.

We cannot keep submitting billing on the last day @ 5:00pm, we will be penalized by PHFA in the future.

Please make sure you are double checking your guarantors, time and date of appointments and are inputting proper data regarding your notes.

Per our previous meetings and correspondence we need to tighten up on our billing submissions.

Please let me know if you have any questions or concerns.

Thank you,
Nicole R. Spruill
Diversified Community Services
Manager of Housing & Financial Counseling
1920 South 20th Street
Philadelphia, PA 19145
215-336-3511 x 318 (office)
215-551-4327 (fax)
nspruill@dcsphila.org

*Exhibit M'*

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Nikkyeea Yabrough<br>2522 South 62nd Street<br>Apartment 2F<br>Philadelphia, PA 19142 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1000<br>Philadelphia, PA 19107 |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2021-01260** | **Legal Unit** | **(267) 589-9707** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Jamie R. Williamson,
**District Director**

**February 26, 2021**
*(Date Issued)*

Enclosures(s)

cc: **DIVERSIFIED COMMUNITY SERVICES**
Patricia McClay
**Director Human Services**
**1529 South 20th Street**
**Philadelphia, PA 19146**

*Exhibit M²*

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u>** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE      --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT B

 **GT** GreenbergTraurig

Malcolm J. Ingram
Tel 215.988.7800
ingramm@gtlaw.com

November 17, 2021

**VIA ECF ONLY**

Nickyeea Yabrough
2522 S. 62nd Street, 2F
Philadelphia, PA 194142

      Re:    <u>Nickyeea Yabrough. v. Diversified Community Services, *et al*./Acceptance of Service</u>

Dear Ms. Yabrough:

      Our firm represents all Defendants in the above-referenced litigation. We write on behalf of Diversified Community Services, Inc. ("Diversified") to accept service of your May 26, 2021 Complaint. To that end, please find enclosed Diversified's Acceptance of Service Form.

      Yours truly,

Malcolm J. Ingram

**Greenberg Traurig, LLP | Attorneys at Law**

1717 Arch Street | Suite 400 | Philadelphia, Pennsylvania 19103 | T +1 215.988.7800 | F +1 215.988.7801

Albany. Amsterdam. Atlanta. Austin. Berlin¨ Boston. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London.¨ Los Angeles. Mexico City.¨ Miami. Milan.¨ Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Sacramento. Salt Lake City. San Francisco. Seoul.¨ Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Aviv.¨ Tokyo.¨ Warsaw.¨ Washington, D.C. West Palm Beach. Westchester County.

Operates as: ¨Greenberg Traurig Germany, LLP. ¨A separate UK registered legal entity. ¨Greenberg Traurig, S.C. ¨Greenberg Traurig Santa Maria. ¨Greenberg Traurig LLP Foreign Legal Consultant Office. ¨A branch of Greenberg Traurig, P.A., Florida, USA. ¨GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimuibengoshi Jimusho. ¨Greenberg Traurig Grzesiak sp.k.

www.gtlaw.com

| | |
|---|---|
| **NIKKYEEA YABROUGH,**<br><br>                    **Plaintiff,**<br>     **v.**<br><br>**DIVERSIFIED COMMUNITY**<br>**SERVICES, *et al.***<br><br><br>                    **Defendants.** | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br><br>May Term, 2021<br><br>No. 002308 |

## ACCEPTANCE OF SERVICE

I, Malcolm J. Ingram, accept service of the Complaint in the above-captioned matter on behalf of Defendant Diversified Community Services, Inc., and certify that I am authorized to do so.


Date: November 17, 2021

*/s/Malcolm J. Ingram*
Malcolm J. Ingram, Esquire
Greenberg Traurig, LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
215-988-7800
ingramm@gtlaw.com

Robert M. Goldich, Esq. (Pa. I.D.  #25559)
Malcolm J. Ingram, Esq. (Pa. I.D.  #323201)
**Greenberg Traurig, LLP**
1717 Arch Street, Suite 400
Philadelphia, PA  19103
T: (215) 988-7830
Attorneys for Diversified Community Services, Inc., Otis Bullock, Jr., and Patricia McClay

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT PENNSYLVANIA

|  |  |
|---|---|
| NIKKYEEA YABROUGH | : Hon. _____, U.S.D.J. |
| 2522 S. 62nd Streeet, 2F | : |
| Philadelphia, PA 19142 | : Civil Action No. 21-cv-_____ |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| OTIS BULLOCK, JR., PATRICIA | : |
| McCLAY and DIVERSIFIED | : |
| COMMUNITY SERVICES, INC. | : |
| | : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served true and correct copies of Defendants' Notice and Petition for Removal upon counsel of record, via the Court's ECF Filing System, this 19th day of November 2021.

Respectfully submitted,

Greenberg Traurig, P.C.
Attorneys for Defendants

By:____*/s/ Malcolm J. Ingram*_____
Malcolm J. Ingram (PA No. 323201)